Plaintiff was struck and knocked unconscious by defendant's trolley bus while attempting to cross Milam Street midway between Common and Douglas, intersecting streets, in the City of Shreveport, Louisiana, about 8:30 o'clock P.M. on March 23, 1940. He instituted this suit to recover damages for the injuries to him as a consequence of the collision, alleging that the accident was due solely to the negligence and lack of care of defendant's servant and agent, the motorman of the trolley, in that he was not keeping a proper and careful lookout for traffic ahead of him, and was exceeding the speed limit, as fixed by the law.
Defendant denied substantially all the allegations of the petition and set forth that the damage suffered by him was the result of his own negligence in not keeping a proper lookout while using the street, in attempting to cross the street in a place other than a regular crossing for pedestrians, and not using ordinary care and prudence in his effort to do so, which acts of negligence on his part are averred to be the proximate cause of the accident. In the alternative, the negligence of plaintiff in the mentioned respects, even though defendant's agent be held to have been negligent, is pleaded in bar of recovery by him. Trial with intervention of jury resulted in a verdict and judgment for $1,000 in favor of plaintiff. Defendant prosecuted appeal.
Questions of fact only are involved. It is not now contended that the trolley's speed at time of the accident was in excess of the legal limit. The fact is it was well within that limit, going not over 18 miles per hour. The trolley was proceeding in a westward or out-bound direction from town on Milam Street. It stopped at the corner of Common and Milam Streets and picked up some passengers, and then proceeded in the same direction. After traveling approximately 120 feet from the intersection and when the trolley was not over 35 feet from the locus of the accident, the motorman observed the appellee at that time about two steps out in the street from the line of cars parked on the left hand or south side of Milam Street, apparently heading for the opposite side of the street. The motorman instantly sounded his horn and almost simultaneously applied the brakes. Evidently, after hearing the horn, appellee started running or jumping in an attempt to cross the street. The motorman swerved the trolley as far as possible to his right in an effort *Page 344 
to avoid hitting him. He was struck by the left hand corner of the front of the trolley. The trolley stopped almost instantly. Plaintiff was not knocked forward but fell with his feet under the trolley. He escaped being run over because the trolley was immediately stopped.
When struck, appellee had reached a point between 10 and 15 feet from the curb on the north side of Milam Street. At this point on the street there was an alley leading north which was used by pedestrians to some extent, and counsel contends that the appellant's servant should have been closely on guard looking for pedestrians at this point. We think these facts do not alter the situation because even though the accident had occurred at a regular intersection, there would be no liability. Plaintiff testified that before attempting to cross the street he stopped and looked in both directions and thought the way clear.
The facts in this case are similar to those found in the case of Owens v. Tisdale, 153 So. 564, 565, decided by this court. In that case the plaintiff got out of a truck at an intersection and stated that after looking to see if any automobiles were approaching, started across the street and was struck by the defendant's car. In that case it was held that plaintiff's own negligence caused the accident, the court stating:
"Neither he nor his witnesses offer any explanation for his not seeing the car of plaintiff which was not far away and in plain view. If he did look, before entering the street, he did not see that which was to be seen; if he listened, he did not hear that which he should have heard. A pedestrian desiring to cross a much traveled thoroughfare of a populous city, discharges only half the duty resting upon him when he merely stops, looks, and listens. In doing this he must see what may be seen and hear what may be heard. We do not think plaintiff looked or listened before trying to cross the street. If he had done so he would not have run into defendant's car, or across its path of travel too close for a collision to be avoided.
"Defendant's version of the facts of the accident smacks with reasonableness and jibes with human experience. He is corroborated by other witnesses who have no interest in the outcome of the case. He was traveling on his side of the street at an ordinary rate of speed and did not see plaintiff until he came suddenly from behind the truck and another car going east and passing between defendant's car and the truck. Plaintiff was running, evidently to get out of the rain falling at the time, and did not take note of traffic conditions about him. As soon as defendant realized that a collision with plaintiff was inevitable he applied his brakes as in emergency. There was contact between plaintiff and the left headlight of the car, he being knocked several feet down the street and to the pavement. Defendant's car was stopped so suddenly that it did not run over or go beyond plaintiff's body. This fact is conclusive of one or two things; defendant's car was not traveling at a rapid rate of speed and/or his brakes were promptly applied and responded efficiently. In these circumstances, defendant evidently exercised prompt and correct resolution, in the face of a sudden emergency, and minimized possible injury to plaintiff. We do not think any negligence attaches to him whatever."
That case is stronger for the plaintiff than is the case at bar, because there plaintiff was at an intersection where pedestrians might be expected to cross, while in the present case plaintiff was in the middle of a block attempting to make a crossing. Further, in the Owens case, though it was found that plaintiff was knocked several feet, the court stated that from the evidence it was clear the car stopped almost immediately.
Plaintiff's counsel contends that even if defendant be not held responsible for the accident on other grounds, it is liable under the doctrine of discovered peril. For all practical purposes this doctrine is the same in scope and effect as the last clear chance doctrine. In the case of Martin et al. v. Missouri Pacific Transportation Company, La.App., 172 So. 558, 561, this latter plea was set up by counsel for plaintiff. In that case the plaintiff entered an intersection at an excessive rate of speed and hit the bus of the defendant, which had entered the intersection first and thus had the right-of-way. To this contention, the court held: "Plaintiff contends he is entitled to recover under the doctrine of last clear chance. He is not entitled to recover on any other doctrine and we do not think that of last clear chance has any application here. It is true we have found that the driver of the bus could have applied his brakes and stopped the bus when he first saw plaintiff's *Page 345 
car some 60 feet away, but he at the time was violating no law of the road and had the right of way. Plaintiff was violating the law of the road and did not have the right of way. We might as easily apply the doctrine to plaintiff as to the defendant. One in the eyes of the law sees that which he should have seen; therefore, plaintiff saw the bus when he was yet 60 feet from the intersection. He knew it had the right of way. He could have stopped his car as the law required him to do and avoid the accident. He had as good or even better chance to stop than did the driver of the bus."
Again we have as strong a case, and possibly stronger for defendant than the one setting forth the rule. Here, under the law, plaintiff is held to have seen that which he should have seen and as the trolley was in plain sight, not far away, and well lighted at the time he started across the street, he must be presumed to have seen it and knew that it had the right-of-way. Even if this view be not adopted, it is clear that the defendant cannot be held liable, because at no time after the motorman saw the plaintiff could he have stopped the trolley and avoided the accident. It was heavily loaded and was going down grade. From the evidence, it seems clear that the motorman saw the plaintiff as soon as it was possible for him to do so, and did everything possible thereafter to avoid the collision. The law does not impose impossibilities upon any one.
Concerning the cases of Jackson v. Cook, 189 La. 860,181 So. 195, and Rottman v. Beverly et al., 183 La. 947, 165 So. 153, cited by counsel for appellee as authority for holding that appellee can recover under the last clear chance doctrine, it is obvious the facts of and rules laid down in those cases are inapplicable to the present case.
In the Rottman case only one question was involved and that was whether or not a person could recover under the last clear chance doctrine when his negligence had continued down to the time of the accident, and the Supreme Court held that he could.
In the Jackson case it was pointed out that the defendant's son did not see the plaintiff in time to avoid the accident when in fact under the law he should have seen him by the exercise of ordinary care, as there was nothing to prevent him doing so. The court held that the mere fact that the driver did not see plaintiff did not absolve defendant from liability, because it was the duty of the driver to look, and according to the findings of both courts, he was not looking. In the present case, unlike the Jackson case, the motorman was looking and saw the plaintiff almost the moment he stepped out from behind an automobile, at which time it was too late to avert the accident.
For the reasons herein assigned, the verdict of the jury and the judgment rendered pursuant thereto, are hereby reversed, annulled and set aside; plaintiff's suit is dismissed and his demand rejected at his cost.