MARTIN et al. v. MISSOURI PAC. TRANSP. CO.*

No. 5388.

Court of Appeal of Louisiana. Second Circuit.

March 1, 1937.

*Rehearing denied April 1, 1937.

did; that plaintiff's car was traveling at an excessive rate of speed when it approached and entered the intersection, and the collision was due solely and entirely to the negligence of the driver of plaintiff's car.

In an amended answer, defendant alleges "that in the alternative and only in the alternative, without admitting negligence of any kind on its part, but on the contrary specifically denying same, defendant pleads that plaintiff's minor son was contributorily negligent herein; that such contributory negligence on the part of petitioner's minor son was the cause of his injuries, as alleged in plaintiff's petition."

The lower court rendered judgment for plaintiff in the sum of $750, with legal interest from judicial demand. Defendant has perfected and prosecutes this appeal.

On trial below there were no objections made by either side to enlarging the pleadings. The result is that the pleadings were greatly enlarged.

Plaintiff did not allege defendant's failure to sound the horn on the bus or the failure of the bus driver to keep a proper lookout. Defendant did not allege plaintiff's failure to observe the stop sign before entering the intersection or his failure to keep a proper lookout. On all these subjects much evidence was admitted without objection and will have to be considered by us. Defendant's plea of contributory negligence is not sufficiently pleaded to admit of proof thereon, but there was no objection to the testimony offered to establish it. It will have to be considered in determining the case. We naturally assume after reading the record that it was the intention of counsel to go into every question pertaining to the case, regardless of the pleadings.

The lower court rendered judgment immediately upon the closing of the case. It has not favored us with its reasons for arriving at its decision and we have not been informed from any other source. The reasons for judgment below may have been based upon erroneous conclusions of law or erroneous findings of fact; whatever they were, we are convinced the decision and judgment is erroneous.

From the great preponderance of testimony and the physical facts, we find that the accident occurred at the intersection of Front street and highway 239, or Liddieville highway, with highway 15; that plaintiff's car ran into the bus, striking it about the left front wheel and fender; that plaintiff's car bounced about 2 feet after striking

Rehearing denied; Taliaferro, J., dissenting.

Anders & Anders, of Winnsboro, for appellant.

Berry & Berry, of Winnsboro, for appellees.

DREW, Judge.

This is a suit for damages arising out of an automobile collision in the town of Winnsboro, La. The collision occurred at an intersection where two highways and a street intersect and is commonly known in the vicinity as "Five Points."

Plaintiff was traveling in an easterly direction on highway 239 and defendant in a northwesterly direction on Front street in the town of Winnsboro. Highway 239 and Front street both intersect highway 15, which leads northwest from Winnsboro and was the direction defendant's bus was going. Highway 15 is paved. Just after the bus and plaintiff's car had come into the intersection and were then on highway 15, the collision occurred.

The allegations of negligence made by plaintiff are that the driver of the bus was traveling at an excessive rate of speed and made no attempt to stop the bus until after the collision.

Defendant denies the allegations of plaintiff's petition. Further answering, it alleges that highway 15 and Front street are both right of way streets; that the bus entered the intersection before plaintiff's car

the bus and the impact shoved or slid the front end of the bus to the right about 6 inches. Plaintiff's car was traveling east and the bus was traveling northwest. Neither Front street nor highway 239 was paved at the time, but, as stated before, highway 15 was a paved one. From the direction of Sicily Island until the intersection is arrived at, highway 15 runs west. Just at the intersection it turns northwest; therefore it was unnecessary for either plaintiff's car or the bus to change its course upon entering the intersection. Plaintiff's car would continue in a straight line east on highway 15 and the bus would continue on a straight line northwest on highway 15. On the southwest side of Front street, a short distance southwest of the intersection, there is located a cotton seed house which to some extent obstructs the view from Front street down highway 239 and vice versa; but when the driver of a vehicle traveling northwest on Front street toward the intersection passes the seed house, he is within 20 or 30 feet of the intersection and at that time can see several hundred feet west on highway 239. One traveling on highway 239 toward the intersection at a point two or three hundred feet from it could only see a traveler on Front street after he came out from behind the seed house. However, when within 50 or 60 feet of the intersection, he could see much farther down Front street.

The main track of the railroad which runs through the town of Winnsboro is parallel with Front street and runs in a northwesterly and southeasterly direction. This track crosses highway 15 a very short distance before the highway turns at the intersection. Northwest of the intersection there is a spur or side track which makes off from the main line and runs down to the cotton seed house on Front street. This side track crosses highway 15 a short distance northwest of the intersection heretofore spoken of. The collision occurred on highway 15 between the side track and the main line. There is a railroad crossing stop sign facing one coming from the west on highway 239. Under the state law it was the duty of the driver of plaintiff's car to stop his vehicle before crossing the track. He did not obey the law.

We will next discuss the speed law applicable to the speed of the bus at the time of the collision, this being plaintiff's principal allegation of negligence.

Ordinance No. 212 of the town of Winnsboro fixes the speed limit on the streets of Winnsboro for automobiles at 15 miles per hour. It is not shown that any signs were posted on the streets, especially Front, to show the speed limit, and is therefore in conflict with rule 20 of title 2, section 3, of Act No. 21 of 1932, which is as follows:

"*(Powers of Local Authorities).* Local authorities, except as expressly authorized by this Act, shall have no power nor authority to unreasonably decrease or diminish any speed limitations declared in this Act nor to enact or enforce any rule nor regulation contrary to the provisions of this Act; except that municipal authorities of incorporated cities, towns or villages, properly authorized and exercising such authority, shall have power to provide by ordinance for the regulation of traffic by means of traffic officers or semaphores or other signalling devices on any portion of the highway where traffic is heavy or continuous and may prohibit other than one-way traffic upon certain streets and may regulate the use of the streets by processions and assemblages. Such municipal authorities may also, except as herein restricted, regulate the speed of vehicles on its streets, in public parks and other places within the corporate limits and shall erect at all entrances to such places adequate signs giving notice of any such special speed regulations."

Also of rule 4(d) of title 2, section 3, of the same act, which is:

"*(Local Speed Regulations).* Local authorities, in their respective jurisdictions, are hereby authorized, in their discretion, to define the speed limitations, which shall be prima facie lawful, within their corporate limits; provided, that municipalities of a population of less than fifteen (15,000) thousand may increase but not decrease the speed limitations provided by this act; provided further, such local authorities shall place and maintain upon all through highways upon which the permissible speed herein provided for is changed, adequate signs giving notice of such speed regulations."

Act No. 21 of 1932 does not fix the general speed limit in towns; therefore, the general rule as to speed set out in rule 4(a) of title 2, section 3, must govern. The general rule is:

"*(Speed—General Rule).* Except as herein provided and subject to the provisions of Rules 3 and 17, and subject to the special

speed limits specified in this Act, it shall be unlawful for any person to drive or operate any motor or other vehicle upon the public roads, highways and bridges of this State at other than a careful, prudent, reasonable and proper speed, having due regard to the traffic, surface and width of the highway, the location and neighborhood, and any other conditions or circumstances then existing, and no person shall, under any circumstances or conditions, drive any vehicle upon the public roads, highways or bridges of this State, at such a speed as will endanger the life, limb or property of any other person; and subject to the special provisions and limitations contained in this Act, the person so driving or operating, or causing to be driven or operated, a motor vehicle on such public roads, highways and bridges, shall be held and deemed to be prima facie at fault in and responsible for any accident or damage proximately flowing therefrom or connected therewith, which presumption, however, may be rebutted and overcome by proper showing of the contrary."

And we must apply this rule to the facts in this case to determine if the bus was traveling at an excessive rate of speed at the time of the accident. The bus had stopped at the railroad station prior to the accident to unload and take on passengers. From the station to the place of accident is not more than three or possibly four hundred yards. When it entered the intersection, it was traveling in third speed. The bus was equipped with a governor which prevented it from making more than 30 miles per hour in third speed. The great majority of the witnesses testified he was making much less than 30 miles, and from what we think a fair analysis of all the testimony, we fix the speed of the bus at from 20 to 25 miles per hour. After the collision, the bus only moved forward 10 or 12 feet before it was stopped. The brakes were good and it could not have been traveling very fast for it could not have been stopped within the short distance it did. When the bus driver was 20 or 30 feet from the intersection, he saw plaintiff's car coming at a very fast rate of speed a distance of about 60 feet from the intersection. At that time if the bus driver had applied his brakes, he could have stopped the bus and possibly averted the accident. He testified he thought he had sufficient time to get by and when he realized he did not, it was too late to avoid the collision.

The driver of plaintiff's car before entering the intersection was faced with two stop signs, one being the railroad sign and the other the highway sign. He did not observe the law in regard to either. The speed his car was making is not fixed in miles per hour, save by himself and two other witnesses. The preponderance of the testimony is that he was traveling fast and much faster than the bus. He testified that when approaching the intersection, he looked toward Baskin, the opposite direction from which the bus was coming, and when he looked back in the direction from which it was coming, the bus was right on him. In other words, when he first saw the bus he was entering the intersection and the bus was also. We think it is clearly shown that the horn of the bus was sounded before reaching the intersection, but just how close to the intersection the bus was when the horn was sounded, is not made clear.

In summing up, we find that the bus under ordinary circumstances was not being operated at an excessive rate of speed. The driver's speed was such that he could have stopped it when he first saw plaintiff's car and thereby avoid the accident.

▆▆ Plaintiff's driver was traveling at an excessive rate of speed upon entering the intersection. He failed to stop at either the highway stop sign or the railroad crossing stop sign, and did not slacken his speed. He was certainly not keeping a proper lookout. The bus was approaching the intersection from the right. It and plaintiff's car were approaching at approximately the same time; therefore, the bus had the right of way. Rule 11(a) of title 2, section 3, Act No. 21 of 1932.

This is true for the reason we find that neither Front street nor highway 239 was a favored street under the laws of the town of Winnsboro.

▆▆ Plaintiff contends he is entitled to recover under the doctrine of last clear chance. He is not entitled to recover on any other doctrine and we do not think that of last clear chance has any application here. It is true we have found that the driver of the bus could have applied his brakes and stopped the bus when he first saw plaintiff's car some 60 feet away, but he at the time was violating no law of the road and had the right of way. Plaintiff was violating the law of the road and did not have the right of way. We might as easily apply the doctrine to plaintiff as to the defendant. One in the eyes of the law sees that which he should have seen; therefore, plaintiff saw

the bus when he was yet 60 feet from the intersection. He knew it had the right of way. He could have stopped his car as the law required him to do and avoid the accident. He had as good or even better chance to stop than did the driver of the bus.

The judgment of the lower court is reversed and plaintiff's demands rejected at his costs.