## HOBBS v. EMPLOYERS' LIABILITY ASSUR. CORPORATION et al.

### No. 17153.

Court of Appeal of Louisiana. Orleans.
April 24, 1939.

Edward Rightor and W. H. Sellers, both of New Orleans, for appellants Mrs. James A. Walker and Employers' Liability Assur. Corporation, Ltd.

H. L. Hammett, of New Orleans, for appellants L. J. Hollands and Hardware Mut. Casualty Co.

Brady, Brady & Phillips, of Brookhaven, Miss., and Lemle, Moreno & Lemle, of New Orleans, for appellee.

McCALEB, Judge.

On May 23, 1937, at about 10.30 a. m., an intersectional collision between two automobiles occurred at the corner of Carondelet and Monroe Streets in the Town of Mandeville, Louisiana. The vehicles involved were a Buick sedan owned and driven by L. J. Hollands of Brookhaven, Mississippi, and a Ford automobile, owned and operated by Mrs. Emily Hayne, wife of James A. Walker of New Orleans. The Hollands car was being driven on Carondelet Street in a southerly direction towards Lake Pontchartrain and the Walker car was proceeding on Monroe Street in an easterly direction towards the business section of Mandeville. When the Hollands car arrived at a point slightly over the center of Monroe Street, which crosses Carondelet Street at right angles, it was struck a violent blow on its right side (between the center and the rear thereof) by the front of the Walker car which had entered the intersection from Monroe Street at an excessive rate of speed. As a result of the impact, the Hollands car turned over and came to rest in a ditch abutting Carondelet Street at a point near the southeast corner of the intersection.

Previous to the accident, Mr. Hollands and his wife, together with a party of friends, had left their home in Brookhaven for the purpose of driving to Mandeville for a Sunday outing. Accompanying him, as passengers in his automobile, were his wife and Mr. and Mrs. William B. Hobbs, who are also residents of Brookhaven. On the journey from Brookhaven to Mandeville, the Hollands car was being followed by an automobile, owned by Mr. Edward L. Seibert, of Brookhaven, which was being driven approximately 50 to 60 feet to the rear of the Hollands car at the time the accident occurred. The Seibert car was being operated by Mr. John A. Garrigan and riding therein as passengers were Mr. and Mrs. Carl Urban, Mr. and Mrs. Seibert and Mrs. Garrigan.

Mr. and Mrs. Hobbs, having received personal injuries as a result of the accident, brought separate suits against Mr. Hollands, the driver of the car in which they were riding, his liability insurance carrier, Hardware Mutual Casualty Company, Mrs. Emily Walker, the owner and operator of the other car involved, and her insurance carrier, Employers Liability Assurance Corporation, Ltd., for the damages they sustained, alleging that the collision was caused by the joint and concurring negligence of the drivers of the colliding vehicles. Mr. Hobbs sues for $10,958.60 and Mrs. Hobbs claims $25,229.60.

The defendants, after filing certain exceptions which were overruled, answered the plaintiffs' petitions and severally denied any liability in the premises.

The defense of Mrs. Walker and her insurance company is that she was driving on Monroe Street at a reasonable speed with her car under control; that when she reached the Carondelet Street intersection, she expected and had the right to expect that all traffic on that street would stop before entering the crossing; that the Hollands car failed to do so and that it ran directly into the path of her automobile. They further set forth that Monroe Street is a much wider thoroughfare than Carondelet Street; that Mrs. Walker had the right of way; that Hollands was not keeping a proper lookout for other vehicles at the time of his approach; that he was at fault in this respect and that his acts of negligence were the sole and proximate cause of the accident. They further pleaded in the alternative that, if it should be found that Mrs. Walker was imprudent in any particular, then Hollands was guilty of contributory negligence and that his con-

tributory negligence should be imputed to the plaintiffs as guests in his automobile.

Mr. Hollands and his insurance company, on the other hand, contend that he at all times operated his car with due care and in accordance with the traffic laws of the State; that Carondelet Street, under the traffic ordinance of the Town of Mandeville, had the right of way over Monroe Street; that he had preempted the intersection; that, when he was almost over it, his car was struck with terrific force by the Walker car which was traveling at a speed in excess of 60 miles per hour and that the accident is solely attributable to the reckless driving of Mrs. Walker.

When the cases were thus put at issue by the filing of the defendants' answers, they were consolidated for purposes of trial. After a hearing on their merits, the district judge, being of the opinion that both Mrs. Walker and Mr. Hollands were guilty of joint negligence having causal connection with the collision, rendered judgment in favor of Mrs. Hobbs and against the defendant insurance companies in solido for the sum of $6,000 and also gave judgment in favor of Mr. Hobbs for the sum of $3,000. All of the defendants have appealed suspensively from the adverse decrees.

■ We notice at the outset that, in the judgments appealed from, the court has cast the defendant insurance carriers only and that Mr. Hollands and Mrs. Walker are not mentioned therein. It is apparent that this is due to an oversight as it is obvious that the insurers could not be held if the defendant drivers had not been at fault. The error is, however, not material since the two insurance companies against whom the judgments have been rendered are ultimately bound to pay in the event they are finally cast.

■ The appeals were filed in this court under separate numbers and were submitted as consolidated cases. We make mention of this because we have just been informed by counsel for plaintiffs that Mr. Hobbs departed this life subsequent to the submission of the cases for our decision. In view of his death, we are compelled to defer our decision in his case until such time as the proper person is substituted as party plaintiff to his suit.

■■ When the cases were argued before this court, counsel for Mrs. Walker and her insurer conceded that the district judge was correct in finding that Mrs. Walker was guilty of negligence. They also agreed that the judge was right in holding that Mr. Hollands was likewise at fault, and that he correctly cast the insurer of the Hollands car in solido with their client. Their sole complaint is that the amounts of the judgments rendered in favor of the plaintiffs are highly excessive.

The concession has relieved us of the duty of discussing the liability of Mrs. Walker and her insurer. It is true that these defendants, in their answer, pleaded that the plaintiffs were guilty of contributory negligence but we assume that this plea has been abandoned since their counsel have not mentioned it either in oral argument or in brief. Apart from this, the evidence adduced in the case amply warrants the conclusion that Mr. and Mrs. Hobbs were free from fault and that, if Mr. Hollands was guilty of negligence, his dereliction is not properly imputable to them.

In contrast to the position taken by Mrs. Walker and her insurance carrier, the defendant Hollands and his insurer strenuously contend that Hollands was not to blame for the accident and that it occurred solely and proximately through the recklessness of Mrs. Walker. Because of this, it becomes necessary to investigate the facts of the case in order that we may determine whether the trial judge was correct in holding that Hollands is chargeable with negligence which had causal connection with the collision.

Carondelet Street is a graveled, two-way thoroughfare 14 feet in width. Monroe Street is likewise a graveled, two-way street and it is 21 feet wide. As above stated, these streets intersect each other at right angles.

The evidence establishes to our satisfaction that the vision of the drivers of the respective cars, when they approached the intersection, was obstructed by the presence of large trees, heavy shrubbery and undergrowth situated on the northwest corner of the crossing, which extended for a distance of at least 60 feet north on Carondelet Street and for a greater space west on Monroe Street. At a point on Carondelet Street, 60 feet or more from the intersection, there is a break or clearing of the trees and shrubbery so that a person approaching the crossing on that street may obtain a view of a portion of the Monroe Street roadway and, likewise, a person

194

traveling on Monroe Street may see a part of Carondelet Street. The testimony is somewhat vague as to how much of the roadways of the intersecting streets may be seen through this clearing and it is certain that an approaching motorist is not afforded a full view of oncoming traffic. For this reason, a driver would not be justified in relying upon the vision afforded to him by the clearing.

Mrs. Walker, in her testimony, concedes that she was negligent. She came into the intersection from Monroe Street at an excessive speed at a time when the Hollands car had already entered it. Some of the witnesses estimate her speed at 50 or 60 miles per hour. Conversely, she and her husband (who was riding with her at the time) declare positively that her speed did not exceed 30 miles per hour. We accept her assertions as genuine forasmuch as we opine that her statement, although a confession of imprudence, is pungent with sincerity.

Contra, Hollands would have us believe that he was without fault. He states that he was proceeding along Carondelet Street at a speed of 20 miles per hour; that when he arrived at a point approximately 60 feet from the intersection, he looked to his right through the clearing of trees and shubbery for traffic approaching from Monroe Street; that the road was apparently clear; that he continued on and looked again when he got to a point 10 feet from the entrance of the intersection; that from that point he could see a distance of 60 feet into Monroe Street; that, upon his failure to observe any oncoming traffic from that position, he proceeded across the intersection and that, when his car had traversed at least half of the crossing, it was struck on its right side by the Walker car. When he was first placed on the stand under cross-examination, he admitted that he went over the intersection at a speed of 20 miles per hour but later during the trial, when he was called to testify in his own behalf, he declared that he slowed down to 15 miles per hour at the time he negotiated the crossing. In spite of his subsequent declaration, we think that the speed at which he ran over the crossing is clearly established to be 20 miles per hour by the testimony of Messrs. Urban, Garrigan and Seibert and that of Mr. and Mrs. Walker.

The question therefore confronting us for decision is whether Hollands acted with circumspection in view of the conditions obtaining at the scene of the accident.

The district judge found that Hollands was at fault in proceeding across the intersection at 20 miles per hour because he was violating an ordinance of the Town of Mandeville which fixed the speed limit at 15 miles per hour. Counsel for Hollands and his insurer now contends that the judge erred in his conclusion for the reason that the Town of Mandeville was without authority to pass an ordinance fixing the speed limit of vehicles at less than 25 miles per hour which is the speed permitted by Paragraph (c) of Rule 4 of Act No. 21 of 1932, § 3, the State Highway Regulatory Statute. In fairness to our brother below, it should be stated that the point now made was not directed to his attention.

In support of this argument, counsel relies on Paragraph (d) of Rule 4 of the State Law, which provides that municipalities having populations of less than 15,000 inhabitants shall have authority to increase the speed limit fixed in the Act but may not decrease it. By Paragraph (c) of Rule 4 of the Act, the speed limit for travel of a motor vehicle on the public roads within any unincorporated town or village is fixed at 25 miles per hour. It is asserted that, since Mandeville admittedly has less than 15,000 inhabitants, the Town Council was without right or power to enact a 15 mile per hour speed limit for motor vehicles. Counsel therefore maintains that Hollands did not breach the law by traveling over the intersection at 20 miles per hour as the State law permitted him to drive at a speed of 25 miles per hour and that he was justified in entering the crossing at that rate because he had the right of way by virtue of a traffic ordinance of the Town of Mandeville which accords to motorists proceeding on Carondelet Street this privilege.

We are unable to coincide with counsel's contention. We concede that the Town of Mandeville exceeded its authority in fixing the speed of vehicles using its streets at less than that permitted by the State law but we are not persuaded that the statute granted Hollands the privilege of entering the intersection where the accident occurred at a speed of 20 miles per hour. Rule 4, Paragraph (c) of the Act, which fixes a 25 mile per hour speed limit for vehicles being operated over the streets of any unincorporated town, may be said to have

application to towns having populations of less than 15,000 inhabitants (by reason of the provisions of Rule 4, Paragraph (d). But that paragraph must be read and construed in connection with Paragraph (a) of Rule 4 which prescribes generally the speed to be maintained by all motorists. The pertinent portion of that provision declares: " * * * It shall be unlawful for any person to drive or operate any motor or other vehicle upon the public roads, highways and bridges of this State at other than a *careful, prudent, reasonable and proper speed, having due regard to the traffic, surface and width of the highway, the location and neighborhood, and any other conditions or circumstances then existing.* * * *" (Italics ours)

The foregoing mandate charges the motorist with the duty of driving at a speed commensurate with all the hazards of the road. In other words, his speed must at all times be reasonable. The miles per hour at which a vehicle is being operated is unimportant. The paramount inquiry is: Would a careful and prudent person maintain such a speed in view of the surrounding conditions and circumstances? See Matulich v. Crockett, et al., La.App., 184 So. 748.

██ Applying this rule to the case at bar, we have no hesitancy in declaring that Mr. Hollands was at fault. According to his testimony, his vision of traffic on Monroe Street, approaching from the right, was totally obscured for a distance of at least 60 feet from the corner. He says, however, that he could see through the clearing of shrubbery before he reached a point 60 feet from the crossing; that he looked and that he saw nothing. Surely, the view afforded to him through the clearing of shrubbery was insufficient to reveal all traffic proceeding on Monroe Street as it is certain that he could only see a part of that roadway. For this reason, it was foolhardy for him to continue on without abating his speed because, when he passed the clearing, his vision of the Monroe Street roadway was totally obscured until he reached a point ten feet from the entrance of the intersection where he says that he could and did see into Monroe Street for a distance of 60 feet. When he made this observation (ten feet from the corner) he was still traveling at 20 miles per hour and had not slackened his speed in any degree. This we think was negligence for, if another vehicle traveling on Monroe Street had arrived at the intersection or within a short distance from it at the same time he was within ten feet from the entrance, it is plain that Hollands could not have brought his car to a stop within sufficient time to avoid a collision. A motorist approaching an intersection, where his vision of oncoming traffic is obstructed, should either bring his car to a full stop or decrease its velocity to such a slow speed so that, in the event of an emergency, he can stop it instantly.

Counsel for Hollands and his insurer has referred in oral argument to our recent decision in Gardescu v. Taylor, et al., 187 So. 135, and he contends that the precautions taken by Mrs. Taylor in that matter were similar to the movements of Mr. Hollands. But we think that the facts of that case are vastly different from the instant one. There, Mrs. Taylor, upon approaching a blind intersection, decreased the speed of her car to approximately five miles per hour and had it under full control at the time she proceeded into the crossing. Here, Mr. Hollands, without abating his speed, drove into the intersection at 20 miles per hour under conditions which would have prompted a careful driver to proceed at a much slower rate.

Conversely, the facts of the instant matter bear strong resemblance to those appearing in Stock v. Davis decided by us on April 10, 1939, 187 So. 679, not yet reported in State reports. In that case we found that the plaintiff was guilty of contributory negligence barring his recovery where he drove into an intersection at 20 miles per hour when his view of approaching traffic was obstructed.

Counsel has cited many other authorities which he claims are controlling in the case at bar. It suffices to say that, in all the cases depended upon, is found a different state of facts from those presented here.

██ Being of the opinion that both Mrs. Walker and Mr. Hollands were at fault, we finally consider the quantum of damages to which the plaintiff is entitled.

Immediately after the accident, Mrs. Hobbs was given first aid treatment by Dr. Paine in Mandeville. Thereafter, she was driven to a hospital in Brookhaven, Mississippi, where she was placed under the care of Doctors Frizell and Savage. Her injuries were diagnosed by Dr. Savage to be contusions and brush burns of the body; ecchimosis of the knee; and in-

juries to the occipital and right parietal bones. In addition to these hurts, she received a serious injury to the sacro-lumbar region and she now contends that there is a separation of the sacro-iliac joint which can only be relieved by the performance of a surgical operation.

Both Dr. Frizell and Dr. Savage state that Mrs. Hobbs sustained profound injuries and that she has endured great physical pain and mental anguish. She remained in the hospital for a period of two weeks. Thereafter, she was removed to her home where she was confined to bed for another two weeks and for the following three weeks she was permitted to walk, with the assistance of a negro maid, to a couch outside her room on a screened porch. She stated that, prior to the accident, she enjoyed good health and that she was an active woman who liked to play golf and work in her garden. She further asserts that, due to the severe blow to her back and the great pain she endures, she is now unable to play golf or work in her garden; that she does not sleep well and that she is very nervous and suffers from crying spells.

The record shows to our satisfaction that Mrs. Hobbs has been constantly under the care of physicians from the date of the accident to the time of the trial.

There is much controversy between the doctors testifying in the case with regard to the injuries to Mrs. Hobbs' back. Her family physician, Dr. Savage of Brookhaven and Dr. Frank Hagaman of Jackson, Mississippi, who subsequently treated her, are both of the opinion that she has sustained a separation of the sacro-iliac joint and that the pain she now suffers can be relieved only by an operation.

Dr. W. R. Bethea of Jackson, a radiologist who made X-Ray pictures of her back, states that the plates show some evidence of irritation in the sacro-iliac joints.

On the other hand, Dr. Frizell, while conceding that Mrs. Hobbs has sustained a severe contusion of the sacro-iliac and that she is still suffering from it, states that there is no separation of the joint.

Dr. E. A. Ficklen of New Orleans, a witness for the defendants, who examined Mrs. Hobbs in January 1938, gave the opinion that she is not suffering from a sacro-iliac separation but that she has a fibrositis which is an injury to the muscles and ligaments of the back.

Dr. John T. O'Ferrell, an orthopedic surgeon of New Orleans, testifying for the defendants, stated that he had examined the X-Ray pictures taken of Mrs. Hobbs and that he did not find any separation of the sacro-iliac. It is his view that she is suffering from hypertrophic arthritis and that this disease is not attributable to the accident.

We find it unnecessary to determine whether plaintiff's physicians or those of the defendants are correct in respect of their diagnoses of the injuries Mrs. Hobbs has sustained in the sacro-iliac region forasmuch as we are convinced that she is still suffering from the effects of the accident and that she was, at least partially, incapacitated at the time the case was heard in the trial court. The district judge awarded her the sum of $6,000 and it is evident that he was considerably impressed with the seriousness of her ailments.

Counsel for the defendants complain that the allowance is excessive and they cite a number of cases where awards of lesser amounts have been given for sacro-iliac complaints. We do not think that the authorities relied upon are applicable to the facts of this case. We have often stated that it is difficult to gauge with exactness the measure of damages to be given in personal injury cases. It is true that, for the purpose of uniformity in the jurisprudence, the courts should try to follow a set standard of allowances where the injuries suffered are similar to those previously adjudged. But, after all, precedents of this sort can only act as guides in aiding the court in arriving at a just award and, in the final analysis, each case must depend upon its own particular facts. We feel that the amount given by the district judge in this case is approximately correct and that it represents fair and just compensation to Mrs. Hobbs for her injuries.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.