This suit is against Gilbert Oil Company and Carl Chapman, its truck driver and the *Page 924 
company's public liability insurer, Zurich General Accident and Liability Insurance Company, Ltd., as the result of an accident involving a Ford Tudor sedan belonging to plaintiff and a Chevrolet tank truck belonging to the defendant Gilbert Oil Company.
Defendants are appealing from a judgment rendered against them in solido by the lower court, for $400, on a demand by plaintiff for judgment for $1,060.86 itemized as follows:
Damage to car $351.26 Medical Expenses 100.00 Lost time from work 62.10 Taxicab fares 8.00 Bus fares 31.50 Telephone calls 8.00 Physical pain and suffering 500.00 ------- $1,060.86
Plaintiff as answered the appeal, praying that the award be increased to $1,000.
Plaintiff alleges that the accident happened in the following manner:
That on or about March 23, 1945, in the morning, he was driving north through the Town of Wisner on Highway No. 15, in a careful, cautious manner at a moderate rate of speed, on the right or east side of the highway, when his car was struck by the truck while it was being driven by defendant Chapman, who was at the time engaged in the scope of his employment with defendant Gilbert Oil Company. He alleges that at the time of the accident there was in force a policy of insurance issued by the defendant insurance company, by the terms of which it obligated itself to pay for all damages and injuries arising from the operation, maintenance or use of the truck. He alleges amicable demand without avail.
He also alleges that just prior to the accident the truck was being driven in a southerly direction on Highway No. 15 at a moderate rate of speed, on its right or west side of the highway and his car and the truck were approaching each other, with each on its right or proper side of the highway, without any indication to plaintiff of impending danger; that as he was approaching the truck in close proximity to it, the driver suddenly and without any warning, and where there was no intersecting street or road, swerved the truck sharply to its left, putting it in plaintiff's lane of travel; that he was keeping a proper lookout and as soon as he saw this sudden move he applied his brakes and otherwise attempted to avert a collision, but was so close that he was unable to do so; that prior to and at the time of the collision his car was entirely on its right side of the highway; that he was in no wise at fault, and the accident was caused solely by the gross carelessness and negligence of the driver of the truck; that as a result of the collision he was badly shaken up and bruised, and his wife, who was riding in the car with him, was seriously and permanently injured, for which she has a suit pending in Federal Court; that he has had medical expense for treating his wife, lost three days from work, paid repair bill for his car and was forced to pay bus and taxi fares and further expenses as itemized above.
Defendants answered, admitting that Chapman was employed by Gilbert Oil Company and was engaged in the scope of his employment at the time of the accident, and admitted insurance covering the truck. They denied all allegations of negligence, and alleged that Chapman was moving on the extreme right-hand side of the highway at approximately five miles per hour, when he reached a point opposite Gilbert Oil Company's bulk plant, and at that time gave a manual left turn signal, looked both north and south and saw no vehicle approaching from either direction that could possibly interfere with his left turn; that as his truck was at about a ninety degree angle across the highway it was suddenly and violently struck by plaintiff's car with such force that it bent a three inch pipe on the grill guard five and three-quarters inches out of line, shattered the right headlight, crushed the right fender and broke the braces supporting the grill guard; that plaintiff's car was moving north on the highway and had just completed a rather sharp turn in the highway some 400 feet south of the point of the accident; that at the time Chapman commenced his left turn, *Page 925 
plaintiff's car was not within view; that plaintiff was driving at such a high and dangerous rate of speed that his car was out of control, and after the brakes had been applied it skidded some 45 feet prior to striking the truck.
They also say that the main street of Wisner, also designated as Highway No. 15, is paved with concrete 36 feet wide and is a four lane highway through the town of Wisner, and that there is additional room available for the use of traffic and at the point of collision there was sufficient room for plaintiff's car to have passed around the truck, either to the right or to the left; that there is no obstruction of view for some 400 feet south of the scene of the accident; that just south of the curve, on the right side of the road, in the corporate limits of Wisner, is a large sign warning motorists that the speed limit is 20 miles per hour; that they believe the speed of plaintiff was at least 50 miles per hour, which was illegal and dangerous; that plaintiff had the last clear chance to prevent the accident as there was room for him to pass on either the right or left of the truck and there existed full opportunity for plaintiff to have discovered the peril of the situation he was creating, and to have brought his car under control and to a stop; that plaintiff admitted his negligence immediately after the accident, in the presence of witnesses, and said he had seen the speed sign and was driving in excess thereof at the time he applied his brakes.
In the alternative, and only in the event the court should find Chapman in any manner negligent, they plead contributory negligence of plaintiff in the following manner:
1. In driving at a dangerous rate of speed in violation of Municipal Ordinance No. 123 of the Town of Wisner, Louisiana, and/or the State Highway Regulatory Act; failing to keep proper lookout; failing to use ordinary care; failing to observe the perilous situation he was creating.
2. Failing to reduce his speed to comply with the provisions of law; failing to bring his car under control or to a stop; failing to timely apply his brakes; failing to pass to the right or left of the truck; refusing to accept the last clear chance to avoid the accident.
3. Failing to keep proper lookout in a situation of peril and in a heavy highway curve as to which he was fully informed; failing to observe an obvious danger.
On these issues the case went to trial, and for reasons orally assigned, the lower court awarded plaintiff judgment for $400.
From the record the following facts are admitted or proven by a clear preponderance of the evidence.
The collision occurred at about 9:45 o'clock a.m. on March 23, 1945. The weather was somewhat cloudy, but visibility was good and the road dry. Highway No. 15, running approximately north and south, is also the main business street of the Town of Wisner. Through the business section the concrete is 36 feet wide. From the scene of the accident the road is straight for some 400 feet to the south where there is a slight "S" curve.
On the morning of the accident plaintiff was driving north in the Ford Tudor sedan, with his wife in the car with him, at a speed of approximately 30 miles an hour. Chapman was driving the tank slowly south, intending to make a left or a "U" turn to get to the bulk plant of his employer. Each vehicle was at that time on its right-hand side of the road. Chapman started to make this turn to the left, and when almost across, and blocking most of the highway, plaintiff's car struck it near the front end. Also traveling south behind the truck was a highway truck with three men in the cab, driving 10 or 12 miles per hour.
From this point there is sharp conflict as to what happened. Chapman says that before starting his left turn he looked back north and saw the highway truck about 250 yards away, then looked southand saw no vehicle approaching from that direction, gave the signal for a left turn by extending his left hand at about a forty-five degree angle downward, and proceeded to turn, without again looking south; that when he finally saw plaintiff's car it was very close to him and he applied his brakes and stopped immediately, and about that time the collision occurred. The three men in *Page 926 
the highway truck, H.D. Pickett, Frank Gordy and the driver, W.C. May, estimate the distance they were behind the tank truck at from 20 yards to 35 yards, and all say they were looking at the truck and saw no signal given by Chapman. The highway truck was traveling at a slow rate of speed and the driver had no difficulty in stopping in time to avoid striking the truck.
Plaintiff and his wife say they saw the truck when it was about 150 feet from them, driving slowly south on its right-hand side of the highway. Plaintiff, they say, was driving at about 30 miles an hour at the time, and when their car was somewhere between 30 feet and 75 feet from the truck, the driver turned left across the path of their car; that plaintiff applied his brakes but was unable to stop in time to avoid the collision. Both say they were looking and saw no signal of any kind indicating that the driver of the truck intended turning to the left. Plaintiff says his right wheel skidded because of running over some gravel on the roadway and that he was not traveling fast enough to skid the other wheels. Other witnesses mention skid marks only by the right wheel. Plaintiff denies that he told the town marshal that he saw the speed sign. Plaintiff also denies that the truck was stopped at the time of the collision.
[1-4] The question for determination is the proximate cause of the accident. After careful consideration of all the evidence, we find, as did the lower court, that the negligence of Chapman, the driver of the truck, was the proximate cause. It is not disputed that he made the left turn at a point where there was no road or street intersection. Whether he gave any signal or not is immaterial, if, at the time he gave it, he did not have a chance to complete the turn in safety. He could have, and should have seen plaintiff's car approaching from the south. If he gave the kind of signal he says he gave, it would not have indicated to any one seeing it that he intended to undertake a left turn, the signal for which is arm extended horizontally. Signal with arm at forty-five degree angle downward is for a stop. Act 286 of 1938, Section 3, Rule 10, Subsection (b). Dart's Statutes, Section 5215. It is also immaterial whether or not plaintiff saw the speed sign, and whether or not he told the marshal he saw it and was exceeding the limit at the time. In the first place, the ordinance provides a speed limit of 25 miles for passenger cars. The marshal says he took it upon himself to cut the speed limit down to 20 miles. In the second place the town could not enact any valid ordinance fixing the speed limit below 25 miles an hour. Act 286 of 1938, Section 3, Rule 4, Subsection (d). Dart's Statutes, Section 5208. Martin v. Missouri Pacific Transportation Company, La. App., 172 So. 558; Foy et al. v. Little et al., La. App., 197 So. 313-316.
It was not the speed of plaintiff's car that caused the collision. Instead, it was the emergency created by Chapman in undertaking the left turn, which is one of the most dangerous operations connected with the driving of a motor vehicle.
[5] There is disagreement as to whether plaintiff could have passed to either the right or left of the truck, and thus avoided the accident, but whether there was room or not is immaterial. He was confronted with the emergency created by the truck driver turning left as he did, and will not be held at fault although he made a wrong choice.
Plaintiff testified to the following losses caused as a result of the collision:
Doctor and medicine bills $ 72.00 Time lost from work 101.12 Taxicab fares 8.00 Bus fares 18.56 Repairs to car 308.76 Telephone calls 8.00 ------ Total $516.44
[6, 7] It is true that plaintiff alleged that he lost only three days from work, amounting to $62.10, but on the trial of the case he proved that he lost five days, amounting to $101.12, without any objection, thus enlarging his claim to that extent. No evidence whatever was offered to contradict his claim for any of the above sums. He also claimed $500 for physical pain and *Page 927 
suffering. When asked about his injuries, he said: "Just stove up and pain in my back; a little old catch or something in my back. It lasted several days — seven or eight days. I never did go to a doctor with it."
We conclude he is not entitled to any award on this demand.
We have been favored with interesting briefs by counsel for plaintiff and defendants, which have been read with interest, including the many citations of authority. The issue in this case is one of fact, as we view it, and citation of authorities and discussion of the briefs would serve no useful purpose.
[8] We conclude that if plaintiff is entitled to any award at all, and we have already decided that he is, then it should have been for the amount of the actual damage he proved.
Accordingly, the judgment appealed from is amended by increasing the amount of the award to $516.44, and as thus amended, it is affirmed, defendants to pay the costs of both courts.
 *Page 25