122 So.2d 666 (1960)
Warren DUFORE, Plaintiff-Appellant,
v.
Jean DAUGEREAUX et al., Defendants-Appellees.
No. 5066.
Court of Appeal of Louisiana, First Circuit.
June 29, 1960.
Rehearing Denied September 15, 1960.
*667 C. Kenneth Deshotel, Opelousas, for appellant.
Davidson, Meaux, Onebane & Donohoe, Lafayette, for appellees.
Before TATE, MILLER and PUGH, JJ.
TATE, Judge.
At 10 o'clock on the clear morning of March 7, 1959, the plaintiff Dufore, while driving his passenger automobile, collided with the defendant Daugereaux' vehicle. This suit against the latter and his liability insurer is brought by Dufore to recover damages suffered by him as a result of this intersectional collision. A companion suit brought by Dufore's collision insurer was consolidated with the present for purposes of trial and appeal. La.App., 122 So.2d 674.
The trial judge held that the plaintiff's recovery was barred by his negligently excessive speed (45-55 mph) at the time of the accident, and he dismissed these companion suits. In reaching this conclusion, the trial court held that the reasonableness of the plaintiff's speed at the time of the accident was governed by an ordinance of the incorporated town of Church Point providing for a maximum speed limit within corporate limits of 25 mph.
The principal contention advanced by this appeal is that the reasonableness of the plaintiff's speed should be determined not by the municipal speed limit of Church Point, which allegedly was not reasonably posted, but rather by what would ordinarily be considered a safe and reasonably prudent speed upon a through highway in open country (not to exceed the maximum state speed limit of 60 mph, LSA-R.S. 32:223), since the site of the accident was *668 in open farmland even though within the corporate limits of Church Point.
The accident occurred at the intersection of West Ebey Street (Louisiana Highway 178) and Sunset Road (Louisiana Highway 1104), which is variously estimated by the witnesses as being either one-tenth or one-half of a mile within and south of the northern corporate limits of Church Point, stipulated to be an incorporated town of less than five thousand inhabitants.
West Ebey Street runs in a north-south direction and is black-topped. It is the main highway between Church Point and Opelousas, and entrance onto it from the side-roads is inhibited by stop-signs. The plaintiff was proceeding on this highway northward towards Opelousas immediately prior to the accident.
The defendant driver, coming from the east, came onto West Ebey Street from Sunset Road, a gravelled side-road, having first stopped at a stop-sign inhibiting his entrance and having observed (he said) no oncoming traffic.
At the place of the accident West Ebey Street is in open country. From the place where West Ebey Street leaves Church Point's main business district (about sixtenths of a mile south of the accident) and along this highway as it passes northward through a thinning residential district into open country and thence (passing the point of the accident) past the corporate limits, there are no signs placed upon this highway to indicate to northbound traffic any municipal or other speed limit. As to southbound traffic entering Church Point, however, there is a sign on the highway at the corporate limits one-half (or one-tenth) of a mile north of the scene of the accident stating that the speed limit is 25 mph, and there is another such sign a short distance north of the site of the accident, but also facing only southbound traffic entering Church Point.

I.
The defendants suggest that there is no evidence that the stop-signs inhibiting the entrance from Sunset Road onto West Ebey Street were so placed pursuant to statute or ordinance; and that therefore the defendant driver, being in the vehicle approaching from the right, had the right of way, since there is no evidence that West Ebey Street had been designated by law as the favored street. LSA-R.S. 32:237, subd. A; Pardue v. Norred, La.App. 2 Cir., 95 So.2d 363; National Retailers Mut. Ins. Co. v. Harkness, La.App. 2 Cir., 76 So. 2d 95.
In our opinion, the cited decisions insofar as not factually distinguishable do not provide the correct principle to be applied to determination of the question of which was the favored street at the present intersection. The stop-signs inhibiting the entrance of traffic onto West Ebey Street, which had been similarly situated for at least five years, were apparent to motorists on both streets. In allocating fault between motorists involved in an accident, it seems to us that reasonably prudent motorists should properly rely upon such stop-signs and can properly expect oncoming motorists also to rely upon them. Reasonably prudent motorists should not collaterally attack the constitutional or legal authority by which stop-signs are erected by simply ignoring them, at the peril of being involved in an accident with other traffic which may rely upon such signs. And, as a matter of fact, there is no evidence to indicate that the stop-signs were not properly placed pursuant to Church Point ordinance or State statute. See LSA-R.S. 32:343, 344.

II.
Without detailed discussion of the evidence, we shall simply state that the evidence shows that the plaintiff is entitled to recovery if his speed at the site of the accident is not subject to the maximum of 25 mph provided by the Church Point ordinance. Prior to the accident, he had left the business district of the town and was proceeding northward on West Ebey Street when the defendant's car suddenly crossed into his path from the gravelled side-road. *669 The defendant had stopped for a stop-sign, looked and failed to see the oncoming plaintiff, and had proceeded into the roadway in derogation of the plaintiff's right of way. The evidence proves that the defendant must have entered into the plaintiff's path when the plaintiff was less than 200 feet distant (adding to his skidmarks the distance travelled during maximum reaction time), so that if the plaintiff was entitled to be approaching at a speed of 45-55 mph he could not reasonably have avoided the accident following the defendant's sudden entry into his path. See Steele v. State Farm Mut. Ins. Co., 235 La. 564, 105 So.2d 222; Guillory v. Frank, La. App. 1 Cir., 95 So.2d 197; Fike v. McGraw, La.App. 1 Cir., 88 So.2d 713.
On the other hand, if indeed the maximum speed limit at the time and place of the accident was 25 mph, then the excessive speed of the plaintiff might reasonably be held to have contributed to the accident.
(Counsel for the appellees further persuasively argues that the physical results of the impact demonstrate that the plaintiff was approaching at a speed substantially in excess of the 45-55 mph to which he and his passenger testified. We do not agree that this physical evidence is of such a nature, under the circumstances of this case, as to require us to discount as false sworn and apparently truthful testimony concerning the vehicle's speed. See, e. g., Steele case, above-cited, at 105 So.2d 225.)

III.
In determining whether the municipal speed limit of 25 mph applied at the place of the accident, chiefly involved is an interpretation of the statutory provision now incorporated in the LSA-Revised Statutes as Section 229, subd. B of Title 32:
"[1] Local authorities may define speed limitations within their corporate limits, which shall be prima facie lawful. [2] But municipalities of less than fifteen thousand population may not decrease the speed limitations of this Chapter. [3] Local authorities so changing the speed limitations of this Chapter must post upon all through highways notice of such changed speed limitations." (Bracketed numbers added by this court.)
The appellees contend and the trial court held that the sentences of this statutory provision mean as follows: (1) Local authorities, including municipalities of less than fifteen thousand population, may fix the speed limits within their corporate limits. (2) But municipalities of less than fifteen thousand population may not decrease the speed limit below 25 mph, the lowest of the "speed limitations" fixed by the Chapter on Traffic Regulations 32 in title of the Revised Statutes. (3) Those municipalities permitted to decrease the speed limit below 25 mph (i. e., "so changing the speed limitations"), which necessarily includes only municipalities exceeding fifteen thousand in population, must post such speed limits when decreased below 25 mph upon all "through highways". The appellees further contend that, at any rate in the present instance, the Church Point speed limit of 25 mph was posted upon the highway at the entrance to the corporate limits of the town and that the plaintiff motorist, who had passed the spot an hour earlier on his way into the town, cannot complain of any lack of notice.
On the other hand, the appellant contends that the meaning of the statute is that municipalities of less than fifteen thousand may not change the general state speed limitations and that, even if they do have such power, such a change is not binding upon motorists in the absence of a reasonable posting upon the highway upon which they are proceeding which will inform them of the applicable municipal speed limit.
Prior to incorporation into the Revised Statutes, the provision in question was enacted as Rule 4(d) of Section 3 of the Highway Regulatory Act of 1938, Act 286 *670 of 1938. As found in the context of its original statutory setting, the provision was clearly not intended to deprive the smaller municipalities of the power to fix speed limits within their corporate limits. See Appendix I, where the text is quoted in full. The effect of the limitation as to municipalities under fifteen thousand population was, in its original context, simply to prevent those municipalities from fixing a speed limit of less than fifteen miles per hour for truck traffic; and, by judicial construction, also to prevent such smaller communities from enacting a speed limit lower than 25 mph for other traffic, see Hobbs v. Employers Liab. Assur. Corp., La.App.Orl., 188 So. 191.
The statutory purpose of the enactment was thus not to deprive municipalities of the power to fix speed limits, but rather to prevent them from fixing unreasonably low speed limits for through traffic and also to require a notice to through traffic of the applicable speed limits by posting them on the highways. See also Section 3, Rule 20, and Section 15 of the Highway Regulatory Act of 1938 (now LSA-R.S. 32:247 and 380), quoted in full in appendix.
The power of municipalities of whatever size to fix maximum speed limits of 25 mph within their corporate limits (provided that such speed limits were duly posted) was never questioned in the sparse jurisprudence interpreting these earlier statutory provisions. See McDonald v. Zurich Gen. Acc. & Liab. Ins. Co., La.App. 2 Cir., 25 So. 2d 923, 926; Woodruff v. Stewart, La.App. 2 Cir., 6 So.2d 796, 798; Foy v. Little, La. App. 2 Cir., 197 So. 313; Hobbs v. Employers Liab. Assur. Corp., La.App.Orl., 188 So. 191; Martin v. Missouri Pac. Trans. Co., La.App. 2 Cir., 172 So. 558. The reason for this interpretation is set forth by Judge (now Justice) McCaleb for the Orleans Court in the Hobbs case, above cited, where it was stated without discussion that the 25 mph speed limit statutorily provided for vehicles being operated over the street of any unincorporated town is, of the speed limitations of the act, the one below which towns of less than fifteen thousand inhabitants could not decrease their own municipal speed limits for passenger vehicles. 188 So. 194-195. No jurisprudence is cited to us holding to the contrary.
But, as the above-cited Foy and Martin cases demonstrate, a lowered municipal speed limit must be posted upon the highways to affect traffic proceeding on it; otherwise, the reasonableness of the speed in question is to be determined by the general state speed limits, especially by the limitation incorporated in the Revised Statutes as LSA-R.S. 32:227 which provides that "In addition to the specific speed limitations of this chapter, no person shall operate any vehicle upon the highways of this state at other than a reasonable and proper speed under the circumstances * * *". This was also the holding in Matlock v. State, La.App. 1 Cir., 4 So.2d 90, where an accident occurred in open country within the corporate limits of Abita Springs, which municipality had an unenforced and unposted ordinance providing for a maximum speed limit of 12 mph; we there held that under those circumstances a speed of 40-45 mph was not excessive and did not bar recovery.
The meaning of Section 229, subd. B as found in the Revised Statutes is not clear, for as incorporated therein, it is found in juxtaposition with certain specific speed limitations enacted by Act 502 of 1948 (now found as LSA-R.S. 32:223, 225, and 226), rather than in the context of its original statutory setting as a component of the Highway Regulatory Act of 1938. We cannot, however, ascribe any legislative intention to change the original meaning of the enactment upon its incorporation in the Revised Statutes, in the face of the settled prior judicial interpretation of its meaning and in the absence of any substantial change by the legislature in its wording or in the wording of related enactments, such as LSA-R.S. 32:247 and 380. (See appendix.)
*671 Thus, to recapitulate, the meaning of LSA-R.S. 32:229, subd. B in the light of its legislative history and prior judicial interpretations is (the actual text of the section is quoted in the first paragraph of this heading, III, of this opinion): (1) All local authorities may "define" the speed limitations within their corporate limits, which shall be prima facie lawful. (2) But municipalities of less than fifteen thousand may not "decrease" the maximum speed limit to below 25 mph, the lowest of the "speed limitations' (Italics ours) of the Chapter. (3) On through highways, any municipal speed limit must be posted in order to be valid and to affect traffic thereupon.
It should be added that the meaning of the third and last sentence of Section 229, subd. B"Local authorities so changing the speed limitations of this Chapter must post upon all through highways notice of such changed speed limitations"is most difficult to perceive in the context of its present statutory setting. In addition, the term "speed limitations" is used in one sense in the second sentence of the section (see above) and in another sense in the third sentence (see below), whereas in the original enactment this confusion was avoided by the use instead of the distinguishing term "permissible speed" in the clause now found as the third sentence of Section 229, subd. B.
However as set forth in Rule 4(d) of Section 3 of the Highway Regulatory Act of 1938, the meaning of the provision is far more clear. In the 1938 highway act, Rule 4(c) provides for speed limits: upon the public highways outside of the corporate limits of incorporated towns, of 40 mph for trucks and of 50 mph for busses; of 15 mph for truck traffic within the limits of incorporated or unincorporated communities; of 25 mph for traffic (except trucks) within or through any unincorporated town or village; and of 35 mph for schoolbusses. (See appendix herein.) Rule 4(d), after confirming the power of local authorities to define the speed limitations within their corporate limits (with the proviso limiting the power of the smaller municipalities), adds the provision requiring these local authorities to "place and maintain upon all through highways upon which the permissible speed herein provided for is changed, adequate signs giving notice of such speed regulations" (Italics ours.) In the light of Rule 4(c) of the 1938 Act the meaning of this quoted provision of Rule 4(d) is obviously that municipalities must post upon "through highways" any change from the speed limitations (e.g., 40 mph for trucks and 50 mph for busses and 35 mph for schoolbusses on the open highways outside of the municipalities) otherwise applicable under the state speed statute for vehicles proceeding into an incorporated municipality.
Reverting again to the present wording of the third sentence of 229, subd. B"Local authorities so changing the speed limitations of this chapter must post upon all through highways notice of such changed speed limitations"this ambiguous provision means, in the light of its legislative history, that any local authorities "so changing" that is, either by "defining" as provided by the first sentence of the section or by "decreasing" as provided by the second sentence) the speed limitations previously provided by the chapter (e.g., 60 mph for passenger vehicles, Section 223; 45 mph for trucks, Section 225; 55 mph for busses, Section 226; 35 mph for schoolbusses, Section 228) "must post upon all through highways notice of such changed speed limitatitions" (Italics ours.) Thus the State limitations otherwise applicable are not changed insofar as traffic on through highways is concerned if the differing municipal limitations are not posted so as to inform such traffic of the changed speed limits.

IV.
In the present instance, the plaintiff motorist was immediately prior to the accident driving in open country upon a *672 blacktopped main highway leading to Opelousas. Entrance onto this highway from the gravelled side-roads was inhibited by stop-signs. There were no signs informing him that any municipal speed limit applied at the place of the accident. If the plaintiff is not held to notice of the unposted municipal speed ordinance, we think that unquestionably the plaintiff's speed was reasonable and proper under the circumstances, and that there is much force to the appellant's argument that the vast preponderance of reasonably prudent motorists would under similar circumstances similarly feel able to proceed safely at a speed of 45-55 mph.
In the absence of any signs reasonably informing northbound traffic of any speed limitation, under LSA-R.S. 229, subd. B as interpreted by the jurisprudence above-cited, we feel that the plaintiff's speed under the circumstances was not excessive and did not contribute to the accident. We therefore hold that he is entitled to recover damages sustained by him as a result of the accident.
That a sign or two faced southbound traffic on the same highway and that the plaintiff had passed them on his way into Church Point an hour earlier did not give the plaintiff reasonable notice of the municipal speed limit, for we do not feel that a motorist may reasonably be held to the requirement of remembering, when he leaves a town, the exact location of a sign he glimpses as he enters the corporate limits of a town out in open country, although the sign may indeed be adequate notice to him to slow his speed as he enters toward the town. Cf. Carlisle v. Parish of East Baton Rouge, La.App. 1 Cir., 114 So.2d 62, 66 (syllabus 7). As a practical matter, such a motorist has little if any better actual notice of the municipal speed limit at the place of the accident than does a motorist who comes through the town from the opposite direction and who is, after leaving the inhabited area of the town, again proceeding in open country upon a highway upon which no speed limits are posted facing him.
Although the plaintiff testified that he thought he had left the corporate limits of Church Point since he was in open country and since there were no speed limit signs, the defendants suggest that street signs marking this ("West Ebey Street" and "Sunset Road") and other intersections along the route and street lamps thereat should have indicated to the plaintiff that he was still within the town limits and that he should have realized that some municipal speed limit was applicable. We are unable to agree that, in open country on a through highway where no speed limit signs were posted, such an inference was necessary or required of a reasonably prudent motorist, since even if he knew he was still within the limits of a municipality he might reasonably assume in the absence of posting that no municipal speed limit affected him other than what was a reasonable and proper speed under the circumstances and general state law.

V.
Plaintiff Dufore is shown to have sustained the following special damages: medical expenses, $346.50 (Tr. 4); deductible portion of vehicle damage not paid for by collision insurer, $100 (Tr. 48); and loss of new clothes torn up and bloodied in wreck, $58.75 (Tr. 50). Although the plaintiff further testified that he lost two weeks' work and wages (Tr. 53), there is no testimony as to the amount of these weekly wages, and we are thus unable to make an award for such loss. The plaintiff is therefore entitled to recover a total of $505.25 for special damages proved by him.
The plaintiff also prays for and is entitled to recover general damages for physical and mental pain and suffering at the time of the accident and thereafter caused by the personal injuries he suffered in the accident. He sustained a severe contusion of the chest and three fractured ribs; a contused kidney; a deep laceration of the mouth; contusions of the elbow, hip and back; and a strain of the back. He was in severe pain immediately after the accident, diminishing *673 greatly thereafter as he was accorded medical care and his ribs were immobilized.
The plaintiff was free from any chest and rib residual after about two months and from kidney residual (for about three weeks the kidney injury produced blood in the urine and thereafter microscopic traces for a few more weeks) after four months, and at the time of trial eight months after the accident had a slight residual (expected to be cured in about four weeks more) by way of a tissue swelling in the back secondary to the strain, as a result of which he suffered slight discomfort of the back upon arising and felt unable to perform his heavier duties. He was in bed for about six days after the accident and returned to work after two weeks. Fortunately, the medical evidence indicates a complete cure of plaintiff's injuries without residual pain or disability.
We think that the plaintiff is entitled to an award of $3,750 for his personal injuries. See Fisher v. Norwich Union Fire Ins. Soc., La.App. 1 Cir., 119 So.2d 562; Pellegrin v. Canal Ins. Co., La.App. 1 Cir., 111 So.2d 568; Janice v. Whitley, La.App. 1 Cir., 111 So.2d 852; Camus v. Bienvenue, La.App. 1 Cir., 91 So.2d 99. The defendants-appellees are of course also to be taxed with the costs of court, including the deposition fee of $50 for each of the three physicians who testified as expert witnesses and the stenographic costs of these depositions.

The Decree.
For the foregoing reasons, the judgment dismissing the plaintiff's suit is reversed. It is ordered, adjudged, and decreed that there be judgment in favor of the plaintiff and holding defendants liable in solido in the sum of $4,255.25, together with legal interest thereupon from date of judicial demand until paid, and for costs.
Reversed and rendered.

Appendix
Highway Regulatory Act 286 of 1938, Section 3, Rule 4:
"* * *
"(c) (Rate and Speed of Certain Vehicles).
"1. It shall be unlawful for any person to operate or drive any motor or other vehicle upon the public roads, highways and bridges of this State, within or through any town or village not incorporated, at a greater rate of speed than twenty-five (25) miles per hour.
"2. It shall be unlawful to operate upon said public highways motor vehicles transporting property in commerce, of either a registered or actual Gross Weight, with or without load, of over three thousand (3000) pounds at a rate of speed in excess of forty (40) miles per hour, or within the corporate limits of any incorporated city or any town or village not incorporated, at a rate of speed in excess of fifteen (15) miles per hour.
"3. It shall be unlawful to operate any motor vehicle engaged in this State in the business of transporting passengers for compensation, charge or hire, on any public road, highway or bridge, between cities, towns and villages at a rate of speed in excess of fifty (50) miles per hour.
"4. It shall be unlawful to operate upon said public roads school busses at a rate of speed in excess of thirty-five (35) miles per hour.
"(d) (Local Speed Regulations). Local authorities, in their respective jurisdiction, are hereby authorized, in their discretion, to define the speed limitations, which shall be prima facie lawful, within their corporate limits; provided, that municipalities of a population of less than fifteen (15,000) thousand may increase but not decrease the speed limitations provided by this Act [Note: The only specific speed limitations of the Act are those set forth in 4 (c), quoted above]; provided further, such local authorities shall place and *674 maintain upon all through highways upon which the permissible speed herein provided for is changed, adequate signs giving notice of such speed regulations."
(In substantially identical wording, the provisions are also found as Rule 4(c) and (d) of Section 3 of the Highway Regulatory Act of 1932, Act 21 of 1932. The predecessor of the provisions with regard to local authorities is further found as Section 5(c) in Act 296 of 1928, the first highway regulatory act enacted by the Louisiana legislature.)
Rule 20 of Section 3 of the Highway Regulatory Act of 1938 provided:
"Local authorities, except as expressly authorized by this Act, shall have no power nor authority to unreasonably decrease or diminish any speed limitations declared in this Act nor to enact or enforce any rule or regulation contrary to the provisions of this Act; * * * Such municipal authorities may also, except as herein restricted, regulate the speed of vehicles on its streets, in public parks and other places within the corporate limits and shall erect at all entrances to such places adequate signs giving notice of any such special speed regulations."
(The earlier highway regulatory acts included similar provisions. The quoted provision is included in the Revised Statutes as LSA-R.S. 32:247.)
Section 15 of the Highway Regulatory Act of 1938 provided:
"Nothing contained in this Act shall be construed so as to limit, restrict, or impair the rights, powers and duties of the governing bodies of cities and towns in this State to continue the exercise of control over and regulations in respect to streets, alleys and other public places located within their corporate limits, nor to limit or restrict the right of such cities and towns, to regulate and control traffic upon the streets, alleys and other public places therein under any law of this State; provided, no city or town shall pass any ordinance or make any regulations establishing any lesser limit or greater requirement than is provided for by the terms of this Act, except as may be herein specifically authorized."
(This is incorporated in the Revised Statutes as LSA-R.S. 32:380.)