FOY et al. v. LITTLE et al. (FIVE POINT SERVICE STATION, Inc., Intervener).
No. 6037.

Court of Appeal of Louisiana. Second Circuit.

December 1, 1939.

Rehearing Denied June 10, 1940.

Writ of Certiorari and Review Denied July 18, 1940.

Theus, Grisham, Davis & Leigh, of Monroe, for appellants.

Thompson & Thompson and James D. Sparks, all of Monroe, for appellees.

DREW, Judge.

This is a suit by the widow in her own behalf and for the use and benefit of her three minor children, issue of her marriage with Isaah Foy, for damages arising from the death of Isaah Foy, caused by an automobile collision between a truck driven by Foy and a touring car owned and driven by Dr. E. S. Little.

The collision occurred in the town of Winnsboro, Louisiana, in the intersection of Main Street with Pine. Winnsboro is a legally incorporated town under the laws of this state. Main Street is paved from the Missouri Pacific Railway tracks on the west to the easterly limits of the town and runs in an easterly and westerly direction. It forms a part of State Highway No. 15, and is practically straight for a distance of more than 1,200 feet west of Pine Street. Pine runs in a northerly and southerly direction and, from the corner of Prairie Street south of its intersection with Main to Main Street, it is paved. However, where it extends over and beyond Main Street north, it is not paved, but continues as a gravelled highway.

Ordinance No. 250 of the Town of Winnsboro makes Main Street a right of way or superior street to Pine, and provides that it is obligatory upon those using Pine Street to bring their cars to a complete stop before entering any right of way street on which stop signs have been installed. Rubber stop signs had been placed on Pine Street on both sides of Main years before this accident, and had been completely worn out. A metal stop sign had been placed on one side of Main where Pine Street intersects it, but not on the other. However, the record discloses that Dr. Little recognized the fact that Main Street was the superior one, and we feel justified in holding that it was.

The view to the west of one traveling south on Pine on reaching Main Street is obstructed by houses, fences, hedges, etc., until within a few feet of the intersection. The same obstructions are to the north view of Pine Street of one traveling east on Main.

On March 18, 1938, Isaah Foy, a 32-year-old negro, was in the employ of the Five Point Service Station, in Winnsboro, Louisiana. Part of his duties were to drive a Chevrolet pick-up truck of his employer's in going for and delivering tires and tubes when they were repaired. On about dusk of this day, he left the Service Station in the truck accompanied by a man by the name of Jenkins. Foy's mission was to go out to a truck owned by T. J. Owens, a short distance outside the corporate limits of Winnsboro, to bring in a tire for repairs. His course was east on Main Street. The weather was clear and there was no traffic on the street at the time. He was traveling on his right side of the street with the lights on the truck burning. At a speed which is a controversial question in this case. Dr. Little was at the time traveling south on Pine street. He was returning from a professional call. In the car with him were his wife and two gentlemen. Dr. Little's car had reached a point in the intersection of Main and Pine streets, approximately a car's length south of the black line designating the center of Main Street and near the center line of Pine, when it collided with the truck driven by Foy. The left headlight of the Foy truck left its imprint in the right door of the two-door sedan driven by Dr. Little. The force of the impact was sufficient to drive the Little car into the extreme southeast corner of the intersection and against a fire plug and telephone pole located just outside the curb in that corner. The intersection was at least 36 feet square. The truck turned end over end and stopped on its left side with its front end facing the northwest corner of the intersection and its back end under the rear bumper of Dr. Little's car.

The only result of the accident with which we are confronted here is that Isaah Foy was seriously injured and died from said injuries two or three days later. His widow was qualified as the natural tutrix of her minor children and instituted this suit against Dr. E. S. Little and his liability insurer praying for judgment in the sum of $20,544.50, with interest, the amount to be divided between her and her minor children in the proportion of one-half to her and one-half to them.

The acts of negligence charged to Dr. Little are as follows:

1. That he failed to bring his car to a complete stop before entering Main Street, known to him to be a highway, being a part of highway No. 15, as required by Ordi-

nance 250 of the Town of Winnsboro, Louisiana;

2. That he was not keeping a proper lookout and drove into the highway, known to him to be a much traveled highway, without stopping, looking and listening, and in utter disregard of the rights of others;

3. That he drove from Pine Street, an inferior street, so designated by the ordinances of the Town of Winnsboro and by the Highway Regulatory Act, into Main Street, a superior street, and he drove into said Main Street in the center thereof, instead of on his right-hand side, as required by law;

4. That he suddenly dashed into the highway without looking either to the right or left, and drove directly into the path of the oncoming truck when that truck was so near and so close that it was impossible to avert a collision; that he did not sound his horn or give any other warning of his approach, and made no effort to avert the collision, which was brought about by his fault, recklessness and negligence; and

5. That he failed and refused to accord to Isaah Foy the right of way given him by Ordinance 250 of the Town of Winnsboro and by the Highway Regulatory Act being Act 21 of 1932, and on the contrary, drove into the highway at a time when he knew he could not cross with safety and. when it was apparent to him or would have been apparent to him if he had looked, that the way was not clear and that the intersection was already preempted and occupied by the truck of the deceased.

Defendants admitted the accident, injuries and death of Isaah Foy and the issuance of the liability policy of insurance covering Dr. Little's car. They denied liability and denied that Dr. Little was negligent in any respect. They alleged that the accident was caused solely by the carelessness, recklessness and negligence of the deceased; they alleged he was driving 50 miles per hour, in violation of Ordinance 212 of the Town of Winnsboro; that he failed to maintain a proper lookout; that he did not have his truck under control; that he failed to accord to Dr. Little the right of preemption to which he was entitled, since he had entered the intersection first and had nearly negotiated it before the truck entered; and, in the alternative, they pleaded contributory negligence on the part of deceased, based upon the negligent acts above alleged.

The Five Point Service Station intervened to recover the amount of compensation paid and to be paid the widow of deceased, and for attorney's fees.

The lower court rendered the following opinion in the case:

"This suit involves an automobile collision at a street intersection in the Town of Winnsboro. Defendant, Dr. Little, violated all ordinances of the Town and also the rules of the road when he entered the intersection. The ordinance requires a full stop, and the rules of the road would require a stop when entering a paved highway from a graveled road, as was done here. Dr. Little did not slow down sufficiently to cause him to go either into low or second gear, and therefore he was traveling at least at a considerable rate of speed.

"Isaah Foy was driving the second car involved in the accident on the paved highway and right of way street at a speed fixed from 25 to 50 miles per hour. An ordinance fixed the speed limit at 15 miles per hour, but this regulation may not be effective as the Town may not have complied with the general state law in making this regulation.

"Defendant does not deny his negligence in entering the intersection without stopping, but relies on contributory negligence to bar recovery. He contends that he entered the crossing first, had preempted the intersection and that decedent's excessive speed caused the accident. Defendant has the burden of proof when relying upon contributory negligence.

"There is no way of determining the speed of the Foy car. It was probably traveling in excess of 35 miles per hour. It was certainly making more than 15 miles, provided by Town ordinance, but, even though it may have been violating this regulation, this in itself does not constitute negligence. The true test is whether Dr. Little in attempting to cross ahead of the Foy car, acted as any ordinary, prudent, reasonable and cautious person would have acted under like circumstances.

"From all of the facts in this case, we think the negligence of Dr. Little in attempting to cross the intersection without coming to a stop, as he was required to do, and without determining that he could safely cross ahead of the Foy car, which had the right of way, was the proximate

cause, and, therefore, Isaah Foy was not guilty of contributory negligence.

"We agree with the many cases holding that where a car has lawfully and prudently entered an intersection, it has the right to proceed across the same. Most of these cases arose at intersections where neither car had the right of way or where an ordinance provided a car to slow down, but not necessarily come to a stop. In this case, if Dr. Little had stopped and then entered the crossing without realizing the excessive speed of the coming car, he might have had the right to proceed. However, if he had seen or should have seen the excessive speed of the other car, he would have been responsible had he pulled in front of it. Dr. Little did not stop and there is nothing to show that he could not have judged the speed of the Foy car, and for these reasons, the law on preempting an intersection do not apply.

"For the foregoing reasons, it is ordered that plaintiff, Arnice Foy, individually, have and recover judgment and against Dr. E. S. Little, and the American Surety Company of New York, in solido, in the full and true sum of $3000.00, with interest from judicial demand and the additional sum of $544.50, doctors' and sanitarium bill, with interest thereon at the rate of 5% from judicial demand.

"It is further ordered that plaintiff, Arnice Foy, in her capacity as natural tutrix for her minor children, Ruby Jean Foy, Isaah Foy and Joan Foy, have and recover judgment against Dr. E. S. Little and the American Surety Company of New York, in solido, in the sum of $6000.00, or $2000.00 for each minor, said amount to be for the use and benefit of said minors; and with interest thereon at the rate of 5% from February 1, 1939, being the date upon which suit was filed and all costs.

"It is further ordered that Arnice Foy, Individually, have and recover judgment against the defendant in solido in the sum of $250.00, as funeral expenses, with interest thereon from judicial demand.

"It is further ordered that the Five Point Service Station, Incorporated, Intervenor, have and recover judgment against the defendant in solido in the sum of $318.50, compensation paid by it to the widow and minors of Isaah Foy, to and inclusive of February 28, 1939, with legal interest thereon from March 17, 1939, and all costs of this suit and for all compensation paid by it

to Arnice Foy, Individually, and to her as tutrix, for the use and benefit of the minors, as fixed by the Compensation Law, which may be paid by it prior to the date of the collection of this judgment; and all amounts paid since February 28, 1939. And the further sum of $200.00 as attorney's fees; all with interest at the rate of 5% from March 17, 1939, and all of which amount in favor of the Intervenor shall be payable out of the judgment above rendered in favor of Arnice Foy, individually, and as natural tutrix of her said minor children hereinabove named.

"Formal judgment putting these reasons in formal judgment may be prepared and presented for signature in open court."

Defendants are prosecuting an appeal from a judgment which was in accordance with this opinion.

Plaintiff has answered the appeal praying that the amount of the award be increased to the original demand.

For the purpose of this opinion, we shall consider the intersection as being 36 feet square. If this is not exactly correct, it can make no difference as the ratios will be the same whether it was larger or smaller. The actual collision occurred in the southwest portion of the intersection. Dr. Little's car had negotiated 25 or 26 feet of the intersection and the truck driven by deceased had covered approximately 12 feet of it at that time. The speed of the Little car was not in excess of 10 miles per hour and that of the truck was certainly not less than 40 miles per hour. It was negligence per se for Dr. Little not to have brought his car to a complete stop before entering the intersection. This negligence is actionable if the proximate cause, and liability will attach to him for whatever damages caused, unless the deceased was negligent and his negligence was a proximate cause or such as to have contributed to the accident and his contributory negligence a proximate cause.

The principal question to decide is whether or not the speed at which deceased's car was being driven was excessive. If it was —and we find little difficulty in reaching that conclusion—a decision of the case ceases to be difficult.

We had occasion to pass upon the validity of Ordinance 212 of the Town of Winnsboro in the case of Martin v. Missouri Pacific Transportation Company, La.App., 172 So. 558, and held there that the Ordi-

nance was without effect for the reason that the officers of the Town had not complied with Rule 20 of Title 2, Section 3, of Act 21 of 1932, and Rule 4(d) of Title 2, Section 3 of the same Act, in fixing the speed limit within the corporate limits of the Town. There is no evidence in this case to cause us to change our opinion or finding as to the validity of that Ordinance. It therefore follows that whether or not deceased was driving his truck at an excessive and unlawful speed will have to be governed by the general rule which is set out in Rule 4(a) of Title 2, Section 3 of Act 21 of 1932 (this accident occurred prior to the passage of the Highway Regulatory Act of 1938, Act No. 286 of 1938). The rule is as follows: "'(Speed—General Rule). (a) Except as herein provided and subject to the provisions of Rules 3 and 17, and subject to the special speed limits specified in this Act, it shall be unlawful for any person to drive or operate any motor or other vehicle upon the public roads, highways and bridges of this State at other than a careful, prudent, reasonable and proper speed, having due regard to the traffic, surface and width of the highway, the location and neighborhood, and any other conditions or circumstances then existing, and no person shall, under any circumstances or conditions, drive any vehicle upon the public roads, highways or bridges of this State, at such a speed as will endanger the life, limb or property of any other person; and, subject to the special provisions and limitations contained in this Act, the person so driving or operating, or causing to be driven or operated, a motor vehicle upon such public roads, highways and bridges, shall be held and deemed to be prima facie at fault and responsible for any accident or damage proximately flowing therefrom or connected therewith, which presumption, however, may be rebutted and overcome by proper showing of the contrary.'"

Considering the directions from which the two cars were coming, their respective views of each other were totally obstructed until one or the other had reached the intersection. It could well be termed a blind intersection, insofar as the deceased and Dr. Little were concerned at that time and, to our minds, there can be no argument to the contrary when we find that the deceased, in approaching this blind intersection at a speed of not less than 40 miles per hour, was driving the truck at an excessive and unlawful rate of speed and was grossly negligent in so doing. The law placed the obligation and duty upon him to approach this intersection at such a speed and have the truck under sufficient control that he might stop it quickly and within a short distance, if confronted with an emergency. The mere fact that he was on a right of way or superior street did not relieve him of this obligation. The law does not give to one using a superior street a right to entirely disregard and ignore those making use of a less favored street.

The record makes it clear to our minds that when Dr. Little drove his car into the intersection, the truck driven by deceased was at least 100 feet west of the intersection. He undoubtedly saw the Doctor's car at that time for he began blowing his horn, but did not slow down until he applied his brakes which took effect about 30 feet west of the point of impact, as was shown by the skidmarks on the pavement. After skidding 30 feet, the impact was with such force as to drive the car owned by Dr. Little a distance of at least 15 feet sideways and into a water plug and telephone pole, almost completely demolishing both vehicles. The truck turned over end over end, the rear end coming over the front end.

We are convinced that if Dr. Little or deceased had used any precautions at all, this accident would not have occurred. If Dr. Little had stopped before entering the intersection, he could have seen the car driven by deceased and allowed it to pass; and at the speed he was traveling he would have had little difficulty in stopping his car. On the other hand, if deceased had been observing the law and had his own car under control, as is required of him by law, he could have stopped his car within the 100 or more feet distance he had in which to do so after Dr. Little entered the intersection. There was apparently no effort made by either to avoid the accident.

For either of these parties to be given any special preference by right of preemption for Dr. Little or by Main Street being a favored street for deceased, would be to put a premium on law violation and negligence. We think the law of this state is well settled that both drivers lost their respective preferences or rights by their negligence and violation of the law; Dr. Little in not coming to a stop before entering the intersection, and deceased in

driving at an excessive and unlawful speed, under the conditions existing at this intersection.

It might be urged that if Dr. Little had come to a complete stop before entering the intersection, the truck driven by deceased would have cleared the intersection in safety. We think that is true, but it might as truly be said that if deceased had been proceeding at a lawful rate of speed, Dr. Little would have cleared the intersection in safety. We are sure that is true for in one second more Dr. Little's car would have been clear of the intersection, even at the slow speed it was traveling. Both Dr. Little and deceased were negligent and their combined negligence was the proximate cause of the collision and resulting damage; and certainly neither is entitled to recover.

The judgment of the lower court is erroneous and is now reversed and the demands of the plaintiff and intervenor are both rejected at their cost.

## On Rehearing.

HAMITER, Judge.

■ After reconsidering this controversy, we are still of the opinion that the action of Dr. Little in proceeding across Main street, a superior or right of way thoroughfare, without previously causing a complete stopping of his machine as required by the municipal ordinance, constituted gross negligence on his part. However, it is now our conclusion with reference to the speed of the truck operated by decedent Foy, and this is different from the one heretofore entertained, that such was not excessive under the prevailing circumstances and conditions.

As stated in the original opinion, there existed no effective ordinance fixing the speed limit for motor vehicles within the corporate limits of the town of Winnsboro; and the question of whether or not the rate enjoyed by the truck was illegal is to be determined by the provisions of Rule 4 (a) of Title 2, Section 3 of Act 21 of 1932, which we therein quoted.

Various estimates on the speed of the truck as it approached the intersection, ranging upward from 25 miles per hour, were furnished by the numerous witnesses testifying. A preponderance of the evidence, which includes the testimony of several disinterested witnesses, warrants a finding, and we so hold, that the correct rate was approximately 40 miles per hour.

Foy was driving at the time on the right side of an 18-foot dry concrete street that was free of curves for a considerable distance. It was about dusk and the headlights on his machine shone brightly. Clear weather prevailed. No vehicular traffic, other than the truck and the Little car, occupied either street in the vicinity of the intersection, which was near the eastern limits of the municipality; and pedestrians were not then visiting that locality. By ordinance, Main street, on which Foy traveled, is designated as superior, from a right of way standpoint, to that of Pine street; and vehicles are directed to effect a complete stop previous to entering it. According to the proof in the record, houses, fences, trees and hedges stood back of and close to the sidewalk on the northwest corner of the intersection; but these did not prevent Dr. Little and Foy from seeing each other when the former reached the north edge of the concrete intersection, as is shown by Dr. Little's testimony and by the fact that Foy began the sounding of his horn approximately 112 feet from the point of contact.

■ A 40-mile an hour speed, under the circumstances and conditions above recounted, and particularly in view of the right of way status of Main street, was not, we think, excessive and in violation of the above mentioned statutory provision. Lending support to this conclusion is the decision in the case of Carkuff v. Geophysical Service, Inc., et al., La.App., 179 So. 490.

Neither do we find that Foy was otherwise guilty of negligence that contributed to or proximately caused the collision. On the Little car's appearance at the intersection, the sounding of his horn commenced. Momentarily thereafter, and evidently when realizing that Dr. Little would not respect his superior traffic privilege, he applied the brakes. These, after taking effect, caused a continuous skidding of the truck's tires a distance of 30 feet and until the impact occurred. Faced with an emergency, not of his own creation, decedent did everything possible to avert the collision, but without avail.

Therefore, it is our holding that the gross negligence of Dr. Little in the operation of his machine was the sole proximate cause of the accident, and as a consequence he is liable for the damages occasioned.

Foy, a member of the colored race, was 32 years of age and had a life expectancy of 18 years when death resulted. His position as a laborer in the Five Point Service Station, which he had held for a number of years, provided him remuneration of $40 monthly, payable on the first and fifteenth of each month.

Immediately following the collision, he was carried to a sanitarium in Winnsboro. Examinations revealed that there had been sustained a multiple fracture of the pelvis, internal injuries and much shock. All possible attention was given him, including operations and the administering of sedatives to relieve pain. At no time was he unconscious. Notwithstanding the morphine injections, excruciating and intense suffering endured until his passing, which occurred during the early morning of March 22, 1938, or slightly more than three days after the accident.

In assessing damages in cases of this nature, there is taken into consideration the pain and suffering of decedent, his station in life, his life expectancy, his earning capacity, and numerous other items.

Under the judgment of the district court, as our original opinion discloses, plaintiff in her individual capacity was awarded $3,794.50. This amount included sanitarium and physicians' bills and funeral expenses totaling $794.50 As natural tutrix for her three minor children, she was granted $6,000, or $2,000 for each minor. All assessments carried five per cent per annum interest from judicial demand. The claim of intervenor, which related to compensation payments, was recognized and ordered paid out of the funds to be obtained by the plaintiff. The award to plaintiff in her individual capacity has our approval and will not be disturbed. That for the benefit of her minor children is, we think, excessive. Damages of $1,500 to each minor, or a total of $4,500, is, under the existing circumstances, more nearly correct.

Subsequent to the granting of this rehearing and to the argument and submission of the case thereon, plaintiff departed this life. Specifically, she died April 21, 1940. Following her death, a petition was filed in this court by Tom Foy, the paternal grandfather of the three minor children, and by the Winnsboro State Bank and Trust Company, in which it is alleged that they have been appointed co-tutors of the minors; and that such children have been recognized by the Fifth District Court in and for the Parish of Franklin as the sole and only heirs of Arnice Foy, the plaintiff, and as such heirs sent into possession of all of her property rights and credits, especially the judgment granted her individually by the trial court. Competent and adequate documentary evidence supports the allegations. On the strength of the petition, with the attached documents, and after giving due consideration to an opposition presented by defendants, we ordered that petitioners, in the capacity of tutors for the minors, be substituted as parties plaintiff and appellee in this cause in the place and stead of Arnice Foy, deceased; and that the proceedings be carried on with them.

The individual claim of the said Arnice Foy became clothed with judicial sanction and ripened into a duly adjudicated property right before her demise; and the award made to her individually by the district court, which we approve as above stated, was inherited by her sole and only heirs at law, the surviving minor children. Chivers v. Roger, 50 La.Ann. 57, 23 So. 100; Castelluccio v. Cloverland Dairy Products Co., Inc., 165 La. 606, 115 So. 796; Hardtner et al. v. Aetna Casualty & Surety Co. et al, La.App., 189 So. 365; Williams v. Campbell et al., La.App., 185 So. 683.

The Castelluccio case furnishes the latest expression of the Supreme Court on the matter presently under discussion. Defense counsel realize, as stated in their brief in support of the mentioned opposition, that the majority holding therein is contrary to their contention that a cause of action in favor of a widow abates by her death when occurring prior to its complete and final judicial determination, irrespective of a judgment in her favor by the district court; and they criticize such holding and the reasons given therefor.

But, say such counsel, even though Arnice Foy was granted judgment in the trial court, it was not in existence at the time of her death. They point out that this court annulled, set aside and reversed that judgment during the original hearing of the cause on appeal, and argue that our decree was merely suspended, and not revoked or voided, by the granting of the rehearing. Among the cases cited in support of this argument is Bloomfield v. Thompson, 134 La. 923, 64 So. 853. That decision, as we appreciate it, is also authori-

ty for the proposition that the filing of an application for a rehearing in an appellate court within the delay allowed by law for that purpose, has the effect of preventing the judgment of such court from becoming final. See also, Code of Practice, articles 911, 912 and 913. In the instant controversy the application was timely filed; and a rehearing, on which the case is now pending, was granted. Consequently, our original decree has not yet become final, and the judgment of the district court has never been effectively set aside.

For the reasons above assigned, the former decree of this court is recalled, annulled and set aside; and it is now adjudged and decreed that the judgment of the trial court be amended to the extent of reducing the total award made in favor of plaintiff, Arnice Foy, against the defendants from $9,794.50 to $8,294.50, and of ordering such reduced amount payable to the substituted plaintiffs and co-tutors, Tom Foy and the Winnsboro State Bank and Trust Company, for the use and benefit of the three minor children; and, as amended, the judgment is affirmed. Defendants shall pay the costs of both courts.

DREW, J., dissents, adhering to the former opinion of this court.