505 So.2d 880 (1987)
W. Eugene ALLEN, et al., Plaintiffs-Appellants,
v.
Carolyn Sue BURROW, et al., Defendants-Appellees.
No. 18555-CA.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1987.
Writ Denied June 5, 1987.
*882 Richie & Richie by Byron A. Richie and C. Vernon Richie, Shreveport, for plaintiffs-appellants.
Cook, Yancey, King & Galloway by Charles G. Tutt and Tim Burnham, Shreveport, for defendants-appellees.
Before JASPER E. JONES, NORRIS and LINDSAY, JJ.
JASPER E. JONES, Judge.
This is an appeal of a judgment, rendered pursuant to a jury verdict, rejecting plaintiff's demands in this personal injury suit arising from an automobile/pedestrian accident. The plaintiff-appellant was W. Eugene Allen, provisional curator of Alice Mae Ruple, who was incorrectly denominated as the provisional administrator of the estate of Alice Mae Ruple in the order of appeal signed June 16, 1986. Alice Mae Ruple died on July 20, 1986, and W. Eugene Allen petitioned this court to be substituted *883 as appellant in his capacity as administrator of the succession of Alice Mae Ruple and, for reasons set out in this opinion, we order his substitution as appellant in this capacity. Alice Mae Ruple was survived by no LSA-C.C. art. C.C. 2315 statutory beneficiaries. The decedent's nephew, W. Eugene Allen, in his individual capacity, along with Louis Osburn, another nephew of the decedent, and Alicia Caffey, a niece of the decedent, joined in the motion to be substituted as appellants. We reject these movers' claim to be joined as appellants for reasons hereafter set forth. The defendants are Carolyn Sue Barrow, driver of the automobile; R.P.M. Pizza, Inc. d/b/a Domino's Pizza, the driver's employer and Commercial Union Insurance Company, liability insurer for the driver and the employer covering the negligent operation of an employee's vehicle while used for business purposes.
We amend the judgment to reflect W. Eugene Allen in his capacity as the administrator of the estate of Alice Mae Rupl, as the appellant and, as amended, we affirm the judgment.

FACTS
On February 10, 1984, at approximately 4:40 p.m., Carolyn Sue Burrow was driving her 1975 Ford Pinto westerly in the outermost lane of Stoner Avenue approaching the intersection of Louisiana Avenue in Shreveport, Louisiana. She was driving approximately 30 m.p.h. Stoner Avenue is a four-lane, undivided roadway running generally east and west and Louisiana Avenue is a two-lane, undivided roadway running generally north and south. The intersection has no marked pedestrian crosswalk and is regulated by a traffic signal. Carolyn Sue Burrow had a green light at the intersection and proceeded through it without stopping. At a point approximately 56½' west of the center of the intersection the Pinto struck Alice Mae Ruple after the 82 year old pedestrian stepped out onto the roadway. The auto/pedestrian collision occurred in the outside westbound lane. The exact location of the accident in this lane is in dispute. The victim was severly injured by the collision and required hospitalization and subsequent admission to a nursing home for full-time care. Her nephew, W. Eugene Allen, obtained her interdiction and an appointment as her curator. He initiated this personal injury suit on her behalf. His aunt was unable to participate in the trial of the suit because of her serious disability and incompetence. She did not testify by deposition.
There were five witnesses to the accident whose testimony was produced at trial. Three of these witnesses testified the accident occurred in the outside westbound lane within one to two steps of the north curb when the victim stepped into the path of the westbound Pinto at a time when Carolyn Burrows had no opportunity to avoid the accident. Two of the witnesses testified the victim had traversed the outside lane to the dividing line between the inside and outside westbound lane at the time of impact. From the testimony of these two witnesses there is a possible inference that the Pinto driver should have seen the victim in the roadway in time to avoid the accident.
The jury, in answer to an interrogatory, found Carolyn guilty of no negligence which contributed to the accident and judgment was rendered rejecting plaintiff's demands. The appellant's assignments of error present the following issues for decision:
(1) Did the jury err in determining that the driver of the vehicle was not at fault in causing the accident? and
(2) Did the trial court err in excluding the hearsay testimony of an unidentified bystander as it qualifies as a "present sense impression" and an "excited utterance?"
Pending the appeal the victim died of natural causes unrelated to the accident and the defendants filed a motion to require the appellant to substitute a proper party as plaintiff. This court granted the motion and gave the appellant sixty days to substitute a proper party. The appellant responded with a motion to substitute himself, as administrator of the victim's estates. The motion to substitute was also *884 made by appellant in his capacity as the victim's nephew and by another nephew and another niece, all in the capacity as the victim's legal heirs, together these individuals being the closest surviving relatives of the deceased. The defendants responded asserting that as no member of the beneficiary class of LSA-C.C. art. 2315 was alive when Alice Mae Ruple died then no claims for general damages can be asserted on appeal. The defendants contend the only claims which can be asserted on behalf of the decedent on appeal would be those for obligations incurred on her behalf necessitated by her injuries. Defendants assert that neither the administrator of the decedent's estate nor the decedent's two nephews and niece can assert on appeal survival actions flowing from the decedent. The movers argued in brief, and at oral argument, that:
(1) The adverse judgment is a property right belonging to the deceased's estate and that the administrator of the decedent's succession, should be substituted as the proper party plaintiff with the right to assert LSA-C.C. art. 2315 survivor's benefit;

(2) In the first alternative, the movers assert that LSA-C.C. art. 2315 violates the provisions of LSA-Const. Art. 1, § 3 (1974) as it unconstitutionally discriminates against elderly individuals with physical handicaps and that the beneficiary class of this codal article should be judicially expanded to include the legal heirs of the decedent who should then be substituted as the proper party plaintiffs; and
(3) In the second alternative, the mover, W. Eugene Allen, asserts, as administrator of the decedent's succession, he is the proper party to assert claims for special damages incurred by or on the behalf of the decedent.
Initially we note, as a general proposition, a litigant must plead the unconstitutionality of a statute in the trial court in order to raise the issue on appeal. Hamiter v. Hamiter, 419 So.2d 517 (La.App. 2d Cir.1982). However, we address mover's arguments as the predicate to this constitutional challenge did not arise until after the judgment was rendered and the matter was pending appeal and as no party requests a remand to the trial court in order to introduce additional evidence. LSA-C.C.P. art. 2164; Rule 1-3, Uniform Rules of Louisiana Courts of Appeal.[1]
We first address the arguments # 1 and # 2 in the motion to substitute parties and conclude they are without merit and the movers are not entitled to the relief therein sought.
Argument # 1The appellant, as administrator of the succession, should be designated as the proper party plaintiff as the adverse judgment is a property right which forms a part of the decedent's estate and includes the survivor rights flowing from the decedent.
The record reveals the trial court's judgment and the order for appeal were rendered on June 16, 1986, with the return date to this court established as August 1, 1986. At the time of the decedent's death on July 20, 1986, there were no living relatives that qualified as statutory beneficiaries in accordance with LSA-C.C. art. 2315 D.[2]
*885 The movers argue that the adverse judgment is a property right, which includes survivor rights, and the judgment is a part of the decedent's estate and the administrator should be recognized as the proper party to assert these rights on appeal. In support of this contention movers cite Castelluccio v. Cloverland Dairy Products Co., 165 La. 606, 115 So. 796 (1927) and Foy v. Little, 197 So. 313 (La.App. 2d Cir.1939) for the proposition that favorable trial court judgments are property rights and that the right of action does not abate at the death of the successful litigant even if the matter is pending on appeal. The movers also cite McConnell v. Webb, 226 La. 385, 76 So.2d 405 (1954) for the proposition that a right of action is abated by the death of the unsuccessful litigant while the matter is pending appeal. The movers conclude that the relevent distinction to be made from this jurisprudence is that favorable judgments are property rights that form part of the decedent's estate while adverse judgments do not and they assert such a distinction is not legitimate and not in accord with LSA-C.C.P. art. 1841 which makes no such differentiation.[3]
We determine that this argument lacks merit. The Castelluccio and Foy cases cited by the appellant rely directly upon Chivers v. Roger, 50 La.Ann. 57, 23 So. 100 (1898) which held that where a LSA-C.C. art. 2315 beneficiary initiates a tort suit as a result of the victim's injury and death, but the beneficiary dies prior to obtaining a favorable judgment on the merits, the heirs of the beneficiary are not eligible to be substituted and continue the litigation. The necessity of a statutory beneficiary obtaining a favorable judgment prior to death, in order to avoid abatement of this right of action, was legislatively overruled when LSA-C.C. art. 2315 was amended by Acts. 1960, No. 30, § 1. See LSA-C.C. art. 2315, Explanatory Note.[4] *886 The relevent aspect of the McConnell case, recognizing an adverse judgment as an impediment to the continuation of a right of action to a survival action, no longer represents the law. Following the 1960 amendment the true criteria to determine whether there is a continuation of a survival action is not the status of a judgment as a species of property right but the availability of a statutory beneficiary at the time of the victim's death. It is well settled that the right of action created by LSA-C.C. art. 2315 is extended only to the statutorily designated individuals enumerated in the "article" and the classes of these beneficiaries must be strictly construed. Roche v. Big Moose Oil Field Truck Service, 381 So.2d 396 (La.1980), appeal dis., 449 U.S. 808, 101 S.Ct. 54, 66 L.Ed.2d 11 (1980); Henry v. State, Through Dept. of Health, 435 So.2d 565 (La.App. 3d Cir.1983), writ den., 441 So.2d 750 (La.1983). Neither W. Eugene Allen, as administrator of the victim's estate or in an individual capacity, nor the other nephew and the niece, have any right to assert a survival action. Haas v. Baton Rouge General Hospital, 364 So.2d 944 (La.1978); Chatman v. Martin, 245 So.2d 423 (La.App. 2d Cir.1971); Succession of Langlois v. Noble, 465 So.2d 108 (La.App. 4th Cir.1985), writ den., 468 So.2d 1209 (La.1985).

Argument # 2Does LSA-C.C. art. 2315 violate the provisions of LSA-Const. Art. 1, § 3 (1974)?
In this alternative argument the movers assert that the classes of beneficiaries incorporated into LSA-C.C. art. 2315 unlawfully descriminate upon the basis of advanced age and poor physical condition. It is suggested that we judicially expand the codal article to allow the legal heirs to be included as beneficiaries. It is contended that the statutory classifications arbitrarily treat elderly individuals with no living statutory beneficiaries differently than younger members of the population with living statutory beneficiaries with the following results:
1) It encourages a lower standard of care toward the elderly;
2) It lowers the availability of attorneys to the elderly and reduces their free access to the judicial system;
3) It causes the elderly to incur higher contingent attorney's fees than younger members of society;
4) It encourages attorneys to go to less effort and less expense for elderly clients and reduces their likelihood of success;
5) It tends to discourage settlement of personal injury claims involving the elderly;
6) It reduces the overall settlement value of claims asserted by the elderly;
7) It encourages dilatory pleadings and actions on the part of defendants;
8) It encourages fraudulent and/or unnecessary adoptions;
9) It reduces the availability of credit medical services for the elderly; and
10) It is demeaning to the human spirit and effectively makes the elderly second class citizens.
In conclusion, the appellant contends that the Louisiana Legislature has no rational basis for limiting the survival action to statutory beneficiaries as the quantum of damages does not increase as may be the case with multiple survivors in wrongful death actions. The appellant also asserts that as a discriminatory effect has been shown, then the burden shifts to the defendant to prove the reasonableness of LSA-C.C. art. 2315.
LAW ON THE LOUISIANA CONSTITUTIONAL PROHIBITIONS AGAINST DISCRIMINATION IN SURVIVAL ACTIONS
"No person shall be denied the equal protection of the laws. No law shall *887 discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or afficiations...." LSA-Const. Art. 1, § 3 (1974).
When a state law classifies individuals on a basis other than one enumerated in LSA-Const. Art. 1, § 3 (1974) a member of a disadvantaged class has the burden of showing that the challenged classification does not suitably further any appropriate state interest. The approach is to focus on the specific merits of the individual case which necessarily entails a balancing or comparative evaluation of governmental and individual interests. Sibley v. Bd. Of Sup'rs Of Louisiana State U., 477 So.2d 1094 (La.1985); Parker v. Cappel, 500 So.2d 771 (La.1987). The right to bring a survival action for a quasi-offense sustained by the deceased party prior to death is restricted to:
(a) the surviving spouse and child or children of the deceased, or either such spouse or such child or children;
(b) the surviving father and mother of the deceased, or either of them, if he left no spouse or child surviving: and
(c) the surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child or parent surviving. LSA-C.C. art. 2315 D(1).[5]
As a general rule, the constitutionality of a statute is only open to attack by a person whose own rights are adversely affected thereby and such a litigant does not have standing to argue that the law is unconstitutional if applied to third parties in hypothetical situations. Baehr v. City Of Lake Charles, 387 So.2d 1160 (La.1980); State v. Turner, 392 So.2d 436 (La.1980).

Do the statutory classifications violate LSA-Const. Art. 1, § 3 (1974)?
We determine that this assignment of error is meritless as the movers have not shown the LSA-C.C. art. 2315 classifications do not further any appropriate state interest which is required in order to establish that the statutory classifications are unconstitutional.
We note the movers are incorrect in asserting that LSA-C.C. art. 2315 classifies individuals upon the basis of age or physical condition. The statute, on its face, does not incorporate these characteristics in any manner and is not intended to treat classes of persons differently according to their age or physical condition. Rather, it classifies individuals who may pursue a survival action upon the basis of the degree of legal relationship to the deceased, a basis not enumerated in LSA-Const. Art. 1, § 3 (1974). The disadvantaged class includes those legal heirs not within the degree of relationship established by the statute. As such, the movers, as the niece and nephews of the deceased, have the burden to show that the chosen classifications do not suitably further any appropriate state interest. Sibley v. Bd. Of Sup'rs Of Louisiana State U., supra; Parker v. Cappel, supra.
In brief, the movers' only argument on point is that unlike the wrongful death suit, it is not reasonable to restrict the survival action to the designated beneficiaries as the quantum of damages does not increase with the number of individuals falling within the chosen class. However, we conclude the possibility of the relatively fixed nature of the quantum of damages in a survival action is only one appropriate consideration to be taken into account. It has been recognized that, of necessity, the legislature was burdened with a need to place some reasonable limitation on the number of potential beneficiaries. Miles v. Illinois Cent. Gulf R. Co., 389 So.2d 96 (La.App. 4th Cir.1980), writ den., 394 So.2d 612 (La. 1980). This limitation on the number of possible litigants, and its obvious benefit to judicial efficiency and economy, is equally applicable to the survival action even though a relatively lower quantum of damages may provide a lesser incentive to individual beneficiaries to seek damages. The disadvantaged legal heirs are not without a remedy as they are allowed a right of action *888 to seek special damages in the form of expenses incurred by the deceased or on the deceased's behalf. LSA-C.C. art. 2315 C.
In balancing and comparing these respective governmental interests with the individual interests we conclude the movers' have failed to establish that the chosen LSA-C.C. art. 2315 classifications do not suitably further the appropriate state concern of limiting the number of beneficiaries with the right of action to bring a survival suit. The chosen classes reasonably embrace those individuals that are likely to be most affected by the death of the deceased and reflect a reasonably appropriate limitation on this right of action. As such, we have no authority to judicially expand the statute and create a new class of beneficiaries. Roche v. Big Moose Oil Field Truck Service, supra.
In regard to the movers' ten point discriminatory effect argument, we note that it arises from the perspective of a living elderly individual with no living statutory beneficiaries who receives less favorable legal consideration than others with living statutory beneficiaries. However, such a third party is not a part of this appeal and the movers make no argument nor cite any authority that would permit them to avoid application of the general rule prohibiting those whose rights have not been adversely affected from attacking LSA-C.C. art. 2315 in such a manner. Cf., Baehr v. City of Lake Charles, supra; Cf., State v. Turner, supra. As the movers have standing to assert only their own rights as members of the disadvantaged class, and as we have determined that the nature of their adversely affected interests are insufficient to render the chosen classifications unconstitutional, then the movers' argument concerning such third persons in hypothetical situations does not aid in meeting the required burden of proof.

Argument # 3Does mover, W. Eugene Allen, as succession representative, have the right to recover special damages?
We conclude that the administrator of the victim's succession is the proper party to be substituted as appellant to pursue claims for obligations incurred by the deceased or on the behalf of the deceased. See LSA-C.C. art. 2315 C. We further note that the defendants conceded the correctness of this conclusion during oral argument. We shall hereafter refer to the substituted party/plaintiff as the appellant.
We now turn to an analysis of the issue on the merits of the appeal.

II. THE ISSUES ON APPEAL

(1) Did the jury err in determining the defendant-driver was not at fault?

LAW ON THE APPELLATE REVIEW OF A JURY'S FACTUAL FINDINGS IN AUTOMOBILE/PEDESTRIAN ACCIDENTS
Where there is evidence before a jury which, upon its reasonable evaluation of credibility, furnishes a reasonable basis for its factual findings, on review the finding should not be disturbed by the appellate court in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Doss v. Hartford Fire Ins. Co., 448 So.2d 813 (La.App. 2d Cir.1984), writ den., 450 So.2d 359 (La.1984).
As a general rule, the operator of a motor vehicle is continually under a duty to maintain a proper lookout and to see things he should have seen with the exercise of reasonable care. Nelson v. Evans, 470 So.2d 212 (La.App. 4th Cir.1985). Motorists who approach intersections are charged with the duty to vigilently watch for pedestrians and vehicles caught between signal light changes and are not warranted in depending exclusively upon a favorable light for the safety of their movements. Davis v. Marshall, 467 So.2d 1211 (La.App. 2d Cir.1985), writ den., 472 So.2d 917 (La.1985). However, a motorist is entitled to assume that the signals are understood and will be observed and he is not required to anticipate that pedestrians will, in violation of law, enter an intersection on an unfavorable signal. Kientz v. Charles Dennery, 209 La. 144, 24 So.2d 292 (1945).
*889 Louisiana law prohibits pedestrians from crossing streets except at authorized locations and if crossings are attempted at other points pedestrians shall yield the right of way to vehiclular traffic. LSA-R.S. 32:211, 213, 214.[6] Drivers of motor vehicles on a city street are not required to anticipate the presence of pedestrians between intersections. Osby v. Harris, 375 So.2d 181 (La.App. 2d Cir.1979); Matthews v. Camus Electric Company, 210 So.2d 189 (La.App. 2d Cir.1968); Henderson v. Baton Rouge Bus Co., 53 So.2d 452 (La.App. 1st Cir.1951). When a motorist sees a mature adult pedestrian apparently in full possession of his or her faculties, in a position of safety, the motorists can assume that such a pedestrian will not leave this position of safety and the motorists can rely on this presumption until some unusual action on the part of the pedestrian indicates to the driver otherwise. Osby v. Harris, supra; Greenup v. Maginnis, 446 So.2d 485 (La.App. 4th Cir. 1984); Rowe v. Hardware Dealers Mutual Fire Ins. Co., 208 So.2d 409 (La.App. 4th Cir.1968), writ den., 252 La. 261, 210 So.2d 505 (1968); Puearry v. Department of Public Safety, 496 So.2d 1372 (La.App. 3d Cir.1986). The driver's perception of an elderly pedestrian standing in the vicinity of a roadway does not, in and of itself, trigger an unusual degree of care on part of a motorist absent the existence of some infirmity of which the driver was aware or reasonably should have been aware. Cf., Ledet v. Toye Bros. Yellow Cab Co., 160 So. 442 (Orl.La.App.1935); Cf., Brouillette v. City Building Supply, 174 So.2d 658 (La.App. 3d Cir.1965), writ den., 247 La. 1090, 176 So.2d 146 (1965).
Motorists are not insurers of pedestrians' safety. Where a pedestrian is negligent and the motorist is not, there is no recovery. Puearry v. Department of Public Safety, supra.

Was the jury verdict supported by the evidence so as to preclude manifest error?
Carolyn Sue Burrow was 20 years old at the time of the accident and a trainee employee of a Domino's Pizza located on Stoner Avenue. She was in route to another Domino Pizza store in Bossier City to pick up extra pizza boxes. She testified that she was not in any particular hurry as she proceeded west down Stoner Avenue in the outside westbound lane and there was no other moving traffic in her vicinity. She stated there were no obstructions to her view of the roadway or on the sidewalk parallel to her direction of travel except a southbound pick-up truck stopped for the traffic signal in the western lane of Louisiana Avenue. Carolyn testified that as she reached a point under the traffic light in the middle of the intersection she first noticed the victim west of the intersection standing close to a street light pole near the north edge of the lane of the street in which Carolyn was traveling. As Carolyn reached the area where the victim was standing the victim stepped off the curb into Carolyn's path of travel. Carolyn testified she swerved her automobile to the left, in an attempt to avoid the victim, but in spite of this attempted evasive maneuver the right front bumper struck Alice Mae *890 Ruple. Carolyn testified the collision caused the victim to be propelled into the air and land upon the roadway in her lane of travel near the point of impact. Carolyn stated the victim had not been standing in the roadway before the accident occurred but had just stepped off the curb.
Roger Skaggs testified he was the police officer who investigated the accident scene and made the needed measurements for a diagram of the scene. He related that the point of impact was determined to be 4½' off the curb and that he had indicated this site on the diagram. He explained these determinations were based upon the position of the victim as she lay on the roadway 4½' from the curb, the apparent angle at which the automobile struck her and evidence of fleshy tissue on the concrete. The scaled diagram of the scene admitted into evidence as P-2 and testimony of the eye witnesses and investigating police officer reflect that the point of impact was approximately 35' west of the west line of Louisiana Avenue and a total of approximately 56½' `from the center of the intersection. The officer related the maximum speed limit was 35 m.p.h. and that the driver told him she was traveling at 30 m.p.h. He also related that he observed no skid marks. The officer determined the victim was struck by the right front bumper of the Pinto.
James Pomraning testified he was an eye witness to the accident. He was a passenger in a Ford pickup truck stopped for a red light in the western lane of Louisiana Avenue at the intersection with Stoner Avenue in the northwest quadrant of the intersection. He related he had noticed the victim walking "pretty slow" on the sidewalk adjacent to his lane of travel. He noticed her resting against a street light at the intersection and that she looked "really tired." He also related she was immediately to his right next to the passenger window as she rested. He did not pay attention after that until he witnessed her "in the middle of the road and the car was ready to hit her." When asked what interval of time passed the witness responded, "whatever time it would take for you to walk maybe from here to the back of the room there, an older person." He also added he first became aware that the victim might be struck when the driver of the pickup, Pat Cambell, said the car was going to hit the the victim. He looked up and saw the car and simultaneously heard the brakes go on immediately prior to the impact. He emphasized that the victim was almost to the next westbound lane of traffic when she was hit. He asserted that the left front bumper of the automobile struck the victim and that she had walked about 25' west of the intersection before attempting to cross Stoner Avenue.
Pat Cambell testified he was the driver of a Dodge half-ton pickup truck, outfitted with an equipment rack, and stopped for a red light on Louisiana Avenue at the intersection of Stoner Avenue, and that James Pomraning had been his passenger. He testified he saw the victim walk by the right side of his truck, which was the first in line at the light, at a slow pace and next observed her when she was struck. His attention was called to the scene by tires squealing and he then observed the impact. He estimated the time interval between first observing the victim and then witnessing the accident to be 45-60 seconds. He stated that the victim was almost to the next lane and that she was knocked into the air and fell toward the curb after being struck by the right front bumper of the automobile. He explained that the rear wheels of the vehicle were "somewhere" in the area of the left lane, further to the left than the front wheels, but added that he could not tell if the driver was moving from the right lane toward the left lane or visa versa at the time of the accident. The witness could not reconcile how the victim could have been struck by the right front bumper where the vehicle had not definitely changed lanes and where she was standing near the adjacent lane of travel with the vehicle positioned so that the front of the automobile was further to the right than the rear.
C.D. Harrison, Jr., testified that he was stopped first in line at a red light at the intersection in the right lane of Louisiana Avenue headed in a northerly direction. *891 He had observed the victim across the intersection on the west sidewalk of Louisiana Avenue walking slowly toward his position. He diverted his attention to concentrate on some paperwork and looked up as he heard a horn beep and tires squeal. He related the weather was clear and that he saw both the Ford Pinto and the victim who was a step or a step and a half off the curb when the impact occurred. He heard the application of brakes before the impact and the victim's body was struck by the right front of the vehicle. He saw that the victim had been carrying a grocery bag and asserted the accident happened instantaneously with her venture out onto the roadway.
Brigette Breaux testified by deposition. She related she had been walking on the sidewalk in a westerly direction on the south side of Stoner Avenue and approaching the intersection just before the accident occurred. As she neared the corner she first noticed the victim across the intersection walking slowly down the sidewalk on the western side of Louisiana Avenue toward Stoner Avenue. The witness related the victim appeared "lonely" and "out of it" and that the victim walked as if she was not paying attention to what she was doing. The witness related that as she continued walking west the sidewalk on the southern side of on Stoner Avenue she observed the victim proceed to a spot west of the intersection near a street light where the pedestrian turned and walked toward Stoner Avenue. The victim then paused momentarily, as if to look for traffic, but did not look and stepped out onto the roadway where she was immediately struck by a vehicle. The witness added that the victim had progressed one step to two steps into the street when the accident occurred and that the collision was unavoidable.
The witness also related an incident where an unidentified bystander had stated immediately after the accident that the driver of the Ford Pinto was the cause of the accident. The witness related that the bystander probably worked in the adjacent building. This bystander stated that she had seen the accident out of a window and that it was the driver's fault. The witness asserted that the bystander could not have properly seen the accident from that window on Louisiana Avenue without straining, as the window was closed, and an argument ensued between these individuals. Counsel for the defendants objected to this testimony as hearsay and opposing counsel asserted that it qualified as a "present sense impression" and an "excited utterance" and for this reason was an exception to the hearsay rule. The trial court sustained the objection. The appellant made an offer of proof of the challenged testimony in order to preserve the objection.
W. Eugene Allen testified his aunt had very bad eyesight and even when wearing glasses could only see things "right in front of her face." He also related that prior to the accident his aunt had exhibited signs of senility and had previously discussed with her the option of going to a nursing home. He concluded by testifying he had tried to stop his aunt from walking downtown and catching a bus but that she persisted in doing so.
The appellant argues that the evidence establishes the defendant-driver had an unobstructed view of the approaching intersection from at least 350' and that she should have seen, as did Brigette Breaux from 150'220' away, the victim's inattentive and confused state as the pedestrian slowly walked toward the intersection. The appellant concludes by asserting that the victim's age and demeanor triggered an unusual duty of care on the part of the defendant-driver and that the jury was clearly wrong in failing to find Carolyn negligent in not taking notice of the victim until the vehicle was in the middle of the intersection.
We conclude that the jury's factual finding of non-liability should not be disturbed as the record establishes no manifest error in its evaluation of the physical evidence and the testimony of the witnesses. The defendant-driver's testimony as to just when and where she first noticed the victim, the position of the victim standing near the north edge of Stoner Avenue west *892 of the intersection near a street light, and the short distance from the curb where the accident occurred was fully corroborated by the testimony of Brigette Breaux and C.D. Harrison, Jr. In addition, the plats of the accident scene entered into evidence as P-2 and P-16 also show the 56½' distance from the middle of the intersection where Carolyn first saw the victim to the point of impact fixed by the investigating officer.
The principal factual dispute involved in this case is whether the accident occurred immediately after the victim stepped off the curb at a distance of about 4' into the outside westbound lane of travel and immediately into the path of the Pinto, or whether the impact occurred after the victim had reached the dividing lane between the outside and inside westbound lanes at a point where the victim had almost completely traversed the outside westbound lane. The testimony of the defendant, Carolyn Sue Burrows, witnesses C.D. Harrison and Bridgette Breaux, all of whom were observing the victim at the time she stepped in the roadway, support the conclusion that the accident happened almost instantaneous after the victim stepped into the roadway at a point very near the curb. The testimony of these witnesses are in direct conflict with the testimony of James Pomraning and Pat Cambell who were occupying the southbound pickup truck stopped on Louisiana for the red light.
From the totality of the record it is clear that the jury could reasonably find the defendant-driver free from fault. The appellant would have us extend the scope of the duty owed by the driver to include the perception of elderly pedestrians as they slowly walk toward an intersection. However, it is not necessary to determine whether a driver's duty is so broad under the facts of this case as the driver here did not see the victim until the victim was standing near the edge of Stoner just before the victim stepped into the road. Carolyn's view of the victim was obstructed by the pickup truck as Carolyn approached the intersection. Carolyn was only in a position to see the victim when Carolyn reached the center of the intersection from which Carolyn could see around the pickup truck and it was from this point that Carolyn first observed the victim. Under these circumstances Carolyn was entitled to presume that the pedestrian will heed an unfavorable traffic signal and not continue into the vehicle's path of travel. Kientz v. Charles Dennery, supra; Cf., Osby v. Harris, supra. There are no facts in the record which are sufficient to rebut this presumption. The driver's main duty, at such an intersection in a metropolitan area and in the late afternoon, is to watch for vehicles on the roadway and for pedestrians caught between lights while attempting to cross the street at an appropriate crosswalk. Davis v. Marshall, supra. When Carolyn first saw the victim near the edge of Stoner some 35' west of the intersection she was entitled to presume that the pedestrian would not enter the lane of travel between intersections as there is no evidence that the driver knew or should have known of the victim's senility and bad eyesight. Cf., Matthews v. Camus Electric Company, supra; Cf., Ledet v. Toye Bros. Yellow Cab Co., supra. C.D. Harrison, Jr. testified the defendant-driver was going 30 m.p.h.40 m.p.h. The driver related she was traveling at 30 m.p.h. Even at the lower estimation it would take an average person 1.5 seconds to perceive the situation and react properly. Murphy v. Allstate Insurance Company, 295 So.2d 29 (La.App. 2d Cir.1974), writ den., 299 So.2d 787 (La.1974). A speed of 30 m.p.h. equates to approximately 44' per second and a vehicle would travel approximately 66' before a driver could see a situation and react accordingly by taking evasive action or initiating a full stop. The defendant-driver, located at the center of the intersection, was approximately 56½' from the victim at the time the victim was first seen west of the intersection and standing near the edge of Stoner Avenue. The record does not give the distance between the vehicle and the victim when the pedestrian ventured out onto the roadway but the defendant-driver, C.D. Harrison, Jr. and Brigette Breaux all related that it was almost instantaneous with the impact. The testimony of these three eye witnesses provide *893 a very substantial evidentiary basis from which the jury could reasonably have determined that the accident was unavoidable, that the driver was free from fault and that the victim was totally at fault in attempting to cross Stoner Avenue approximately 35' west of the intersection and in failing to yield to oncoming traffic.

(2) Did the trial court err in excluding the testimony of the hearsay statement of the unidentified bystander?

LAW ON THE "EXCITED UTTERANCE" and "PRESENT SENSE IMPRESSIONS" EXCEPTIONS TO THE HEARSAY EVIDENCE RULE
Hearsay evidence is testimony in court of a statement made out of court, the statement being offered as an assertion to show the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. State v. Martin, 356 So.2d 1370 (La.1978). As a general rule, hearsay evidence is inadmissible. State v. Martin, supra; LSA-R.S. 15:434.[7] The "excited utterance" and the "present sense impression" are nonstatutory exceptions to the hearsay rule and form a part of the law of evidence. State v. Smith, 285 So.2d 240 (La.1973). Formulation of these exceptions differ but all courts agree on two basic requirements: (1) there must be an occurrence or event sufficiently startling to render normal reflective thought processes of an observer inoperative, and (2) the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought. State v. Henderson, 362 So.2d 1358 (La.1978). It is not required that the declarant actually be involved in the startling event, as being a bystander is sufficient, and the specific identity of the declarant need not be established. State v. Smith, supra.

Should the hearsay have been admitted?
The appellant argues the declaration by the unidentified bystander talked to by Bridgette Breaux is either an "excited utterance" or a "present sense impression" and that reversable error occurred when the trial court sustained the objection to this testimony as hearsay evidence. Appellant argues this hearsay evidence could have had a major impact on the jury's decision as the hearsay asserter had a vantage point similar to that of Brigette Breaux and C.D. Harrison, Jr.
The record shows that the statement in question concerned only the unidentified witness's opinion as to the defendant-driver's fault in causing the accident. Bridgette Breaux testified the hearsay asserter made no statements with regard to the accident other than "it was the girl's fault."
We decide that the trial court was correct in ruling that the declarant's statement was not admissible. It is well recognized that a jury, as the trier of fact, has the duty of determining what facts have been proved and what facts have not been proved. Fisk v. Chamblee, 430 So.2d 1332 (La.App. 3d Cir.1983), writ den., 439 So.2d 1076 (La.1983). It is within the province of the jury to apply the facts to the law in order to fairly adjudicate the rights, liabilities and obligations of the parties concerned. Poynor v. Cure, 443 So.2d 1151 (La.App. 5th Cir.1983), writ den., 446 So.2d 1225 (La.1984). The non-statutory exceptions to the hearsay rule are premised upon the establishment of the factual context of an event for the benefit of the trier of fact. G. Pugh, Louisiana Evidence Law, Chp. 6 (Supp.1978). As the unidentified witness's statement concerned only an opinion as to who was at fault in causing the accident, and as it contained no factual assertions whatsoever that would aid the jury in determining the defendant-driver's legal fault, then the statement does not come within the scope of the recognized exceptions and was properly excluded.

CONCLUSION
The judgment appealed is amended to substitute the adminstrator of the estate of *894 Alice Mae Ruple as the party plaintiff and as amended the judgment is affirmed.
NOTES
[1] Art. 2164. Scope of appeal and action to be taken; costs

The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.
RULE 1-3. SCOPE OF REVIEW
The scope of review in all cases within the appellate and supervisory jurisdiction of the Courts of Appeal shall be as provided by LSA-Const. Art. 5, § 10(B), and as otherwise provided by law. The Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise.
[2] At the time of the decedent's death LSA-C.C. art. 2315 provided as follows:

"Art. 2315. Liability for acts causing damages; survival of action
"A. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
"B. Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person.
"C. (1) The right to recover damages to property caused by an offense or quasi-offense is a property right which, on the death of the obligee, is inherited by his legal, instituted, or irregular heirs, subject to the community rights of the surviving spouse.
"(2) As used in this Paragraph, property damages may include expenses or monetary obligations necessarily incurred by the obligee on account of such offense or quasi-offense; however, if the obligee is survived by any beneficiary enumerated in the following Paragraph of this Article, such expenses or obligations, shall be recoverable by said beneficiaries.
"D. (1) The right to recover all other damages caused by an offense or quasi-offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of:
"(a) The surviving spouse and child or children of the deceased, or either such spouse or such child or children;
"(b) The surviving father and mother of the deceased, or either of them, if he left no spouse or child surviving; and
"(c) The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving.
"(2) The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased.
"(3) A right to recover damages under the provisions of this Paragraph is a property right which, on the death of the survivor in whose favor the right of action survived, is inherited by his legal, instituted, or irregular heirs, whether suit has been instituted thereon by the survivor or not.
"E. As used in this Article, the words `child', `brother', `sister', `father', and `mother' include a child, brother, sister, father, and mother, by adoption, respectively."
(Acts 1984, No. 397, § 1) [emphasis added]
[3] Art. 1841. Judgments, interlocutory and final

A judgment is the determination of the rights of the parties in an action and may award any relief to which the parties are entitled. It may be interlocutory or final.
A judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment.
A judgment that determines the merits in whole or in part is a final judgment.
[4] 1960 Explanatory NoteHenry G. McMahon

This article was amended on the recommendation of the Louisiana State Law Institute Primarily to broaden the right to recover damages for wrongful death, and to solve the problems which otherwise would be presented by the doctrine of abatement of actions. As amended, it implements Art. 428, LSA-Code of Civil Procedure. The amendment makes a number of changes in the law. First, it makes a right of action, or an action, to recover property damage heritable. Second, it broadens the primary class of survivors so as to include major children. Third, if a survivor who has the right to recover damages for the physical injury or wrongful death of a deceased person should die, after instituting suit but before judgment, the instituted action is inherited by the survivor's heirs, who may be substituted as parties plaintiff. In this respect, the amendment overrules legislatively Chivers v. Roger, 1898, 50 La.Ann. 57, 23 So. 100, and the cases based thereon. [emphasis added] See also LSA-C.C. art. 2315C(1) at footnote # 2, supra.
[5] See footnote # 2, supra.
[6] § 211. Pedestrians subject to traffic regulations

Pedestrians shall be subject to traffic-control signals at intersections as provided in R.S. 33:233 unless otherwise required by local ordinance, but at all other places pedestrians shall be accorded the privileges and shall be subject to the restrictions stated in this Part. [emphasis added]
§ 213. Crossing at other than cross walks
A. Every pedestrian crossing a roadway at any point other than within a marked cross walk or within an unmarked cross walk at an intersection shall yield the right of way to all vehicles upon the roadway.
B. Between adjacent intersections at which traffic-control signals are in operation pedestrians shall not cross at any place except in a marked cross walk.
§ 214. Drivers to exercise due care
Notwithstanding the foregoing provisions of this Part, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a highway. [emphasis added]
[7] § 434. Admissibility of hearsay evidence.

Hearsay evidence is inadmissible, except as otherwise provided in this Code.